**In re Norman STONE, Debtor.**

**Richard STONE, Plaintiff/Appellee,**

v.

**Norman STONE, Defendant/Appellant.**

Nos. 88 B. 20195 (HS), 88 Civ. 7329 (GLG).

United States District Court, S.D. New York.

Dec. 23, 1988.

---

Aronwald & Pykett, White Plains, N.Y. (Daniel J. Pykett, of counsel), for plaintiff/appellee.

Barr and Faerber, Spring Valley, N.Y. (Harvey S. Barr, of counsel), for defendant/appellant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

This bankruptcy is the product of various partnerships operated by two brothers, Norman and Richard Stone, gone sour. The acrimonious dispute between the two has moved well beyond sibling rivalry into the realm of full-fledged internecine warfare. The abbreviated facts are as follows.

The two brothers (hereinafter referred to by their first names) were partners in a collection of business entities involved primarily in the manufacture and sale of floor tiles and kitchen cabinets. Beginning in 1976, Norman engaged in various and sundry schemes whereby partnership assets were diverted or concealed for his personal use. Slowly grasping this reality, Richard initiated legal proceedings in state court in 1978 that ultimately sought, *inter alia*, a dissolution and accounting of the brothers' partnership interests. Following trial, and finding that Norman had misappropriated partnership assets through a series of underhanded and devious practices, a dissolution and accounting were ordered. *Stone v. Stone*, Nos. 7141/79 & 11987/80 (Sup.Ct. June 24, 1983), *aff'd as modified*, 109 A.D. 2d 834, 486 N.Y.S.2d 358 (2d Dep't), *appeal dismissed*, 65 N.Y.2d 1053, 494 N.Y.S.2d 1061, 484 N.E.2d 1059 (1985). Following appeal, the matter was returned to the trial court for the accounting.

Norman, confronted by the reality that he would finally have to account to his brother for the misappropriated assets of what had apparently become a multi-million dollar business, filed for reorganization under Chapter 11 of the Bankruptcy Code on March 6, 1986 in the Central District of California. Barely one month later, the case was converted to Chapter 7.

Richard then petitioned for relief from the automatic stay to permit the court-ordered accounting, and further interposed an objection to the discharge of his as yet undetermined claim. The California bankruptcy court denied the motion for relief from the stay pending a trial on the dischargeability question. In July of 1987, however, before that trial could take place and almost seventeen months after Norman had filed his bankruptcy petition, Richard moved to transfer the proceeding to New York. That motion was granted.

Upon transfer to the bankruptcy court in this district, Richard moved for summary judgment on the dischargeability issue. He argued that Norman was collaterally estopped from relitigating certain factual issues decided by the state court that would, in effect, necessarily preclude discharge. In sum, claims deriving from the "fraud or defalcation" of the debtor while the debtor was acting in a "fiduciary capacity" are not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(4) ("section 523(a)(4)"). Richard maintained that the state court dispositively determined that Norman had engaged in fraud and defalcation while serving as a partner and that, therefore, collateral estoppel prevented the relitigation of those issues now. The bankruptcy court, the Honorable Howard Schwartzberg presiding, agreed and granted the summary judgment motion. *Stone v. Stone (In re Stone)*, 90 B.R. 71, 75 (Bankr.

S.D.N.Y.1988). In addition, Judge Schwartzberg found that, because the debtor received a Chapter 7 discharge on November 3, 1987, and because Richard's claim had been deemed a non-dischargeable debt, neither the automatic stay nor a post-discharge injunction would operate to prevent the accounting, which could thus proceed apace. *Id.* at 81. Norman appeals that judgment on various grounds, which we consider seriatim.

### 1. Non-dischargeability and the use of collateral estoppel

Appellant's principal contention is that fraud and defalcation were not issues actually litigated in the state court proceeding, which was limited solely to determining if a dissolution and accounting of the brothers' partnership interests were warranted. Thus, it is posited, collateral estoppel improperly was invoked. We disagree.

■ The Supreme Court has noted that "[i]f, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [of the Bankruptcy Act, the precursor to section 523 of the current Bankruptcy Code], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979) (dictum). Notwithstanding the *Felsen* dictum, some courts have placed limitations on the use of collateral estoppel in the context of section 523(a)(4). We, however, agree with and adopt the precedent cited by the bankruptcy court in its decision and find that, consistent with the *Felsen* dictum, collateral estoppel is applicable in the context of a section 523(a)(4) determination. *Stone,* 90 B.R. at 74–75. Thus, invocation of collateral estoppel in such circumstances will be appropriate when issues before the bankruptcy court are the same as issues actually and necessarily litigated in a prior proceeding that have been determined by a final judgment. *MA & M Inc. v. Supple (In re Supple),* 14 B.R. 898, 903–04 & n. 7

(Bankr.D.Conn.1981) (and cases collected therein).

■ Here, had the bankruptcy court's holding rested solely on the question of fraud, appellant's argument on appeal might derive firmer support. One need not engage in fraud to be found in breach of a fiduciary duty, and it might be argued that any findings of fraud by the state court were neither necessary to nor a part of the court's determination that appellant had breached his fiduciary duties as a partner. We need not reach that issue, however, for either fraud *or* defalcation by a fiduciary will prevent discharge, and we can say without hesitation that the state court found there to be defalcation in this case—whether or not that actual term was used.

At minimum, "defalcation," as that term is used in section 523(a)(4), embraces misappropriation by a fiduciary. *Central Hanover Bank & Trust v. Herbst,* 93 F.2d 510, 511–12 (2d Cir.1937) (L. Hand, J.). Indeed, it has been suggested that the term probably includes behavior beyond misappropriation, encompassing a fiduciary's failure to properly account for entrusted funds. *Id.; Besroi Constr. Corp. v. Kawczynski (In re Kawczynski),* 442 F.Supp. 413, 418 (W.D.N.Y.1977); *Kaufman v. Lederfine,* 49 F.Supp. 144, 145 (S.D.N.Y.1943). Determining whether there had been a misappropriation of partnership assets (i.e., whether appellant had breached his fiduciary duties) was necessarily part and parcel of the state court's finding that dissolution and an accounting were warranted. The various underhanded practices and acts of misappropriation found by the state court and which served as the bases for its ruling are meticulously set forth in Judge Schwartzberg's decision, and need not be repeated here. *See Stone,* 90 B.R. at 75–79, 80. Thus, whether or not there was outright fraud in this case (and, make no mistake, it appears quite clearly that there was), appellant unquestionably was found by the state court to have engaged in the defalcation of partnership assets, and that finding was necessary to the state court's ruling. Further, that appellant had a sufficient incentive to litigate these matters at that time, if not

obvious to the reader, is underscored by counsel's own admission that, "[u]nable to pay the extreme costs of the accounting, Norman had no choice but to file a petition for bankruptcy." Appellant's Brief at 4. Under these circumstances, the bankruptcy court correctly decided that the defalcation issue conclusively had been determined by the state court, and that appellant would be collaterally estopped from relitigating the matter in these proceedings. *Cf. Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir.1988) (notwithstanding fact that complaint in state action did not expressly allege "embezzlement," the state judge found there to be embezzlement, the issues raised in the state and bankruptcy proceedings were essentially the same, the state and federal standards for embezzlement were identical, and the bankruptcy court thus properly invoked collateral estoppel in determining that "embezzlement" under section 523(a)(4) had occurred).

Appellant is particularly troubled by the bankruptcy court's conclusions that it was "required to adhere to the [state court's] findings of fact," and that those facts were "accept[ed] as binding." *Stone*, 90 B.R. at 75. We do not share appellant's concern, for such is the end of collateral estoppel. *See* 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.441[2], at 729 (2d ed. 1988) ("The purpose of collateral estoppel by judgment is to *preclude* the repeated controversy of matters judicially determined....") (emphasis added). Of course, as we have made clear, it remains solely within the purview of the bankruptcy court to determine if the requirements of section 523(a)(4) have been met, and if the standards for the litigated state claim match the federal standards for the exceptions provided under that section. *Wallace*, 840 F.2d at 764–65. Judge Schwartzberg, relying on those facts that had been conclusively and finally determined by the state court, made such an independent judgment. *Stone*, 90 B.R. at 79–80.

Appellant's reliance on *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980) (per curiam) and its relations for a contrary conclusion is misplaced. *See Supple*, 14 B.R. at 903–04 n. 7 (distinguishing these cases as limiting the full application of collateral estoppel in the bankruptcy context). As alluded to *supra*, we agree with Judge Schwartzberg and the precedent he relied upon in determining that, consistent with the pertinent Supreme Court musings on the subject, the full doctrine of collateral estoppel—and not some watered-down version thereof—is fully applicable in the context of section 523(a)(4). We think the far better rule to be that although the dischargeability determination is a legal one within the exclusive province of the bankruptcy court, to be made by applying the statute to the facts of the case, it does not follow that the bankruptcy court must relitigate the entire factual record. Those facts conclusively determined in an earlier proceeding involving identical issues, that were actually and necessarily litigated, should be given preclusive effect in making the requisite legal determination under section 523(a)(4). *Wallace*, 840 F.2d at 764–65; *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981); *Franks v. Thomason*, 4 B.R. 814, 820 (N.D.Ga.1980).

■ Yet a further challenge to the use of collateral estoppel in this case is asserted by appellant. He charges that there was no final judgment entered in the state court, and that this prevents application of collateral estoppel. Again, we must disagree.

The final judgment rule is not unbending an inflexible; a talismanic approach to the rule must give way to a practical application that recognizes the realities before the court. As the Second Circuit opined in a related context,

> Whether a judgment ... ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no

really good reason for permitting it to be litigated again.

*Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied sub nom., Dawson v. Lummus Co.*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). These factors were operative here, and militate in favor of affirmance. The state court, in determining that dissolution and an accounting were warranted in light of appellant's defalcation of partnership assets, held a full trial on the question. That decision was then appealed to both the Appellate Division and the Court of Appeals. The matter was returned to the trial court for the sole purpose of conducting the mandated accounting, and that accounting and subsequent entry of final judgment have not occurred only due to operation heretofore of the automatic stay. As to appellant's liability for defalcation of partnership assets, however, there can be no doubt. The law of the case on that issue is both settled and *final. See especially id.* (noting that when what might otherwise be considered a "nonfinal" order is appealable and has been appealed, that decision will be considered "final" and application of collateral estoppel to identical issues will be proper).

For all of these reasons, the bankruptcy court's application of collateral estoppel to the issue of appellant's defalcation was proper.

### 2. The meaning of "fiduciary" under 11 U.S.C. § 523(a)(4)

■ It has been suggested that the broad construction accorded the term "defalcation" in section 523(a)(4) runs counter to the salutary purpose of bankruptcy, to wit, that the debtor be provided a realistic opportunity for a "fresh start." If the simple failure to account for funds is not dischargeable, what then is left of dischargeability? As to this, the response is quite clear. Although defalcation may serve to deny discharge of the debt in question, it is only that defalcation by one acting in a "fiduciary capacity" which falls subject to this exception. Moreover, we underscore that the concept of fiduciary embodied in section 523(a)(4) is more narrowly confined than is its common- or state-law relatives. Springing from the Supreme Court's decision in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934), it has been said that section 523(a)(4) speaks only in terms of technical or express trusts, and that constructive, resulting, or implied trusts do not fall within section 523(a)(4)'s ambit. *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986); *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 124 (6th Cir.1985); *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338–41 (5th Cir. 1980). Put differently, the debtor must serve as technical trustee prior to and independent of the debt incurred by fraud or defalcation. *Davis*, 293 U.S. at 333, 55 S.Ct. at 153–54; *Angelle*, 610 F.2d at 1338. Given this limitation, the defalcation exception to discharge remains sufficiently circumscribed and in harmony with the remedial purposes of the Bankruptcy Code.

■ Focusing on the fiduciary limitation, appellant makes further challenges to the decision rendered below. In ascertaining whether appellant was a fiduciary for purposes of section 523(a)(4), Judge Schwartzberg looked to the requirements of New York's partnership statutes in making his determination. *Stone*, 90 B.R. at 79–80. Appellant contends that this reliance on state law was improper since a fiduciary analysis under section 523(a)(4) is essentially and necessarily a matter of federal law. This argument is without merit. "Although the concept of fiduciary is to be narrowly defined as a matter of federal law, state law is to be consulted to determine when a trust in this strict sense [i.e., under section 523(a)(4) ] exists." *Ragsdale*, 780 F.2d at 796.

■ Appellant, however, further contends that the kind of fiduciary relationship implied by New York's partnership statutes is not the kind of technical trust contemplated by section 523(a)(4). Most particularly, New York law provides that every partner shall "hold as trustee for [the partnership] any profits derived by him

without the consent of the other partners...." N.Y. Partnership Law § 43 (McKinney 1988). It is claimed that since the fiduciary obligation is not triggered until after the act creating the debt, it does not meet the definition of "fiduciary" contemplated by section 523(a)(4).

As a general proposition, it has been posited that partners do not qualify as fiduciaries under section 523(a)(4). 3 Collier on Bankruptcy ¶ 523.12, at pp. 523–97 to 523–98 & n. 13 (5th ed. 1988). The correctness of this conclusion is a matter we need not pass upon for, whatever its accuracy, it must give way to the particular circumstances of this case.

In interpreting a California partnership statute identical to section 43 of New York's Partnership Law, the Ninth Circuit conceded that, on its face, this is "the sort of trust *ex maleficio* not included within the purview of § 523(a)(4)." *Ragsdale*, 780 F.2d at 796. The court went on to note, however, that California courts "have raised the duties of partners beyond those required by the literal wording of [the statute]. In California, ... [t]his is more than just a fiduciary relationship created in response to some wrongdoing; California has made all partners trustees over the assets of the partnership. Accordingly, we hold that California partners are fiduciaries within the meaning of § 523(a)(4)...." *Id.* at 796–97 (footnotes omitted).

An identical situation presents itself here. Beyond the express language of section 43 of the Partnership Law, New York partners are *at all times* accountable to one another as trustees. In the timeless words of then Chief Judge Cardozo, a partner is "[a] trustee [who] is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545 (1928). *Accord Auld v. Estridge*, 86 Misc. 2d 895, 382 N.Y.S.2d 897, 898, 902 (Sup.Ct. 1976). In New York, therefore, as in California, the true contours of a partner's fiduciary obligations are defined prior to and independent of the act which created the debt in question. Consequently, we think *Ragsdale* controls, and we find that appellant was a "fiduciary" as that term is construed under section 523(a)(4).

### 3. "Debt" under 11 U.S.C. § 523(a)(4)

Section 523(a)(4) speaks in terms of the discharge of "debt." Appellant contends that appellee has no defined "debt" that can be the subject of a discharge complaint. Judge Schwartzberg rejected this argument, *Stone*, 90 B.R. at 73–74, and we affirm his decision on this question by adopting the articulate and persuasive reasoning set forth in his decision.

### 4. Venue

Finally, appellant contends that the change of venue in this case was improper because appellee's venue motion, made some seventeen months after commencement of the Chapter 11 case, was untimely. *See* Bankr.R. 1014 ("*on timely motion* of a party in interest ... the case may be transferred to [an appropriate] district") (emphasis added). Appellant does not challenge the substantive reasons motivating transfer, and makes no claim that he has been prejudiced therefrom. The sole argument is that the motion was untimely and, therefore, should not have been granted.

Under 28 U.S.C. § 1404, the federal venue statute, venue motions are committed to the sound discretion of the trial court. Although the timeliness of the motion is certainly a factor to be considered, it is not dispositive and, absent a showing of prejudice, will not prevent transfer. *Essex Crane Rental Corp. v. Vic Kirsch Constr. Co.*, 486 F.Supp. 529, 534–36 (S.D.N.Y. 1980). We see no reason why this rule should not apply to Bankruptcy Rule 1014 and, consequently, appellant's challenge to the change of venue is rejected.

### Conclusion

For all of these reasons, the decision of the bankruptcy court is affirmed.

AFFIRMED.