**In re Adam C. JARDULA, Debtor.**

**NASSAU SUFFOLK LIMOUSINE ASSOCIATION, INC., Plaintiff,**

**v.**

**Adam C. JARDULA, Defendant.**

**Bankruptcy No. 089–90259–21.**
**Adv. No. 089–0039–21.**

United States Bankruptcy Court,
E.D. New York.

Dec. 24, 1990.

---

Martin S. Dorfman, Woodbury, N.Y., for plaintiff.

Robert L. Pryor, Mineola, N.Y., Pryor & Mandelup, for defendant/debtor.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court is a motion for summary judgment filed by the plaintiff, Nassau

Suffolk Limousine Association, Inc. ("Nassau Suffolk") in this adversary proceeding against the debtor, Adam C. Jardula. Nassau Suffolk is contesting the dischargeability of the debt owed it, listed in Schedule A–3 of the debtor's bankruptcy petition in the amount of $16,846.41. Jardula filed for relief under Chapter 7 on March 8, 1989.

The complaint recites that Jardula was a licensed insurance broker, that in that capacity he placed certain physical damage insurance for various members of the plaintiff association with Connecticut Indemnity Insurance Company; that each covered company was required to deposit various sums with defendant as a deposit to ensure that future premiums would be paid when due; that the insurance policy was cancelled on September 1, 1988 with no premiums due and owing; that the defendant did not return the security deposits despite a demand therefor; that he thereby breached his fiduciary duty to the plaintiff; that Section 523(a)(4) exempts from discharge debts incurred for "defalcation while acting in a fiduciary capacity." The complaint concludes: "WHEREFORE, plaintiff demands judgment declaring that defendant's debt to it is excepted from discharge."

Defendant's Answer admitted the complaint's factual allegations except that he denied that he was a licensed insurance broker or that he breached a fiduciary duty to plaintiff.

The complaint was filed on June 8, 1989. On October 16, 1989, Jardula pleaded guilty to petit larceny in satisfaction of all the charges under an information earlier issued against him charging him with Grand Larceny. The information charged that while acting as an independent insurance broker he stole in excess of $3,000 by taking money due for premium payments and keeping it for his personal use.

On June 21, 1990, plaintiff moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7056 of the Bankruptcy Rules. The Plaintiff's Statement of Material Facts as to which no triable issue of fact exists submitted pursuant to Local Bankruptcy Rule 22(b) reads, insofar as relevant:

4. That, while a licensed insurance agent and/or broker, defendant collected premiums from members of plaintiff.

5. That said premiums were forwarded to the insurer as security for the payment of future premiums when they became due and owing.

6. That said premiums were returned by the insurer to the defendant for remittance to the insured.

7. That defendant failed to refund said premiums and used said funds for his own personal needs without the consent of the insured.

8. That defendant was arrested and charged with a larceny of said funds and pleaded guilty thereto.

9. That, as a condition of his sentence on the criminal matter, the Court required that defendant execute a confession of Judgment in favor of plaintiff that was to survive a discharge in bankruptcy.

10. That Section 2120 of the N.Y.S. Insurance Law states that premiums collected by defendant are trust funds and that defendant is a fiduciary with regard to said funds.

11. That defendant's conduct amounted to a defalcation of fiduciary responsibility and a larceny.

Defendant's Response took issue with the legal conclusion that defendant's conduct amounted to a defalcation or larceny and contended that there was a triable issue in that "the return premiums ... were utilized for the general business needs of AIP Agency, Inc. and not for plaintiff's [sic] 'own personal needs.'" (Defendant's Rule 22(b) Statement). Otherwise, Jardula did not contest plaintiff's Statement.

The Plaintiff's Memorandum of Law submitted in support of the motion for summary judgment argued that the debt was excepted from discharge not only under 11 U.S.C. § 523(a)(4), but also under 11 U.S.C. §§ 523(a)(6) and 523(a)(7). Section 523(a)(6) makes nondischargeable debts for willful and malicious injuries; Section 523(a)(7), debts for fines, penalties and forfeitures.

In response, defendant asked the Court to disregard all the arguments relating to 11 U.S.C. § 523(a)(6) and § 523(a)(7) on the ground that these sections were outside the scope of the pleadings and should be properly pleaded and resolved in the context of a separate and distinct adversary proceeding. To this, plaintiff's attorney replied that this Court might properly deem the pleadings amended to include all the grounds he was now alleging as a basis for nondischargeability and grant summary judgment on any and all such grounds. The Court concluded that the plaintiff could amend its complaint to contest dischargeability under Sections 523(a)(6) and 523(a)(7), as well as under Section 523(a)(4), and for purposes of this pending motion for summary judgment stated that it would treat the complaint as so amended. *See In re Gunn*, 111 B.R. 291 (9th Cir. BAP 1990); *In re Tester*, 56 B.R. 208 (W.D.Va.1985). However, it also ruled that it was unnecessary for the defendant to file papers in opposition to plaintiff's motion, insofar as summary judgment was requested pursuant to Sections 523(a)(6) and 523(a)(7), because the Court was firmly of the view that summary judgment was not available under either section based on the facts set forth in the Rule 22(b) statements.

But because the Court thought that the debt in question might be barred from discharge as "embezzlement", which together with a larceny, is made a separate ground for nondischargeability under 11 U.S.C. § 523(a)(4), in addition to "fraud or defalcation while acting in a fiduciary capacity", it invited briefs on the following questions:

(1) In view of the complaint and the procedural history of this case is the Court free to consider summary judgment on the ground that the debt of the defendant to the plaintiff is due to embezzlement, or larceny, or is the Court limited to considering dischargeability on the ground that the debt is the result of defalcation while the defendant was acting in a fiduciary capacity?

(2) If the Court is free to grant summary judgment under 11 U.S.C. § 523(a)(4) on any ground other than that the debt is due

to defalcation while the defendant was acting in a fiduciary capacity, is the plaintiff entitled to summary judgment on the ground that the defendant's debt to it is due to embezzlement? Is the plaintiff entitled to summary judgment on the ground that the defendant's debt to it is due to larceny?

11 U.S.C. § 523(a)(4) makes nondischargeable a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

■ Having considered the parties' memoranda it is the considered conclusion of this Court that if there are no material issues of fact respecting the nondischargeability of the defendant's debt to the plaintiff on any one of the three grounds listed in 11 U.S.C. § 523(a)(4), summary judgment may properly be entered for plaintiff despite the narrow language of the complaint. The defendant is not being prejudiced thereby. He has been given ample opportunity to brief and be heard on the issue of dischargeability on any of the three grounds. No new facts have been added. It would elevate form over substance to deny summary judgment on the ground of embezzlement just because the complaint only pleads "fraud or defalcation while acting in a fiduciary capacity." To do so would be to make a fetish of pleading. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). "The Rules themselves provide that they are to be construed 'to secure just, speedy, and inexpensive determination of every action.'" *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Summary judgment is appropriate here because the facts admitted by the defendant conclusively establish that the plaintiff is entitled to the judgment it seeks. There are no material issues of fact to be tried and "the movant is entitled to judgment as a matter of substantive law." *In*

*re Stone,* 90 B.R. 71, 74 (Bankr.S.D.N.Y.), *aff'd,* 94 B.R. 298 (S.D.N.Y.1988), *aff'd,* 880 F.2d 1318 (2d Cir.1989) (without opinion); *In re Goux,* 72 B.R. 355, 357–58 (Bankr.N. D.N.Y.1987) (and cases cited). For the reasons which follow, the defendant's debt is nondischargeable (1) as a debt due to embezzlement; and (2) as a debt due to defalcation while acting in a fiduciary capacity.

## DISCUSSION

### *Embezzlement*

Section 523(a)(4) excepts from discharge any debt arising from embezzlement. The Code changes the prior law in that the phrase "while acting in a fiduciary capacity" does not qualify the word embezzlement or the new category, larceny, and thus the coverage of Section 523(a)(4) of embezzlement is broader than that of former Section 17(a)(4) (former 11 U.S.C. § 35(a)(4), Bankruptcy Act of 1898, as amended.) 3 Collier on Bankruptcy, ¶ 523.14[1][c] at 523–96, ¶ 523.14[3] at 523–102 (15th Ed.1989); *In re Graziano,* 35 B.R. 589, 593–94 (Bankr.E.D.N.Y.1983); *In re Bevilacqua,* 53 B.R. 331, 334 (Bankr.S. D.N.Y.1985).

The terms embezzlement and larceny in Section 523(a)(4) are to be determined under federal common law. *In re Bevilacqua,* 53 B.R. at 333; *In re Graziano,* 35 B.R. at 594. Embezzlement for purposes of 11 U.S.C. § 523(a)(4) is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Moore v. United States,* 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895); *In re Graziano,* 35 B.R. at 594; *In re Bevilacqua,* 53 B.R. at 333; *In re Goux,* 72 B.R. at 359; *United States Life Title Ins. Co. v. Dohm (In re Dohm),* 19 B.R. 134, 138 (N.D.Ill.1982); *In re Schultz,* 46 B.R. 880, 889 (Bankr.D.Nev.1985); *Matter of Burgess,* 106 B.R. 612, 621 (Bankr.D. Neb.1989). Larceny differs from embezzlement only in the manner in which the property comes into the hands of the person charged with fraudulently appropriating it.

"Normally proceedings involving discharge and dischargeability are not grist for summary judgment motions." *Matter of Esposito,* 44 B.R. 817, 821 (Bankr.S.D.N. Y.1984). Nevertheless, summary judgment has repeatedly been granted in such proceedings based on collateral estoppel. Conclusive as to its availability in this Circuit is *In re Stone, supra.* In that case, Bankruptcy Judge Schwartzberg held that plaintiff's debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(4) because the debtor committed fraud and defalcation while acting in a fiduciary capacity. He predicated that conclusion on the facts found in an earlier state court proceeding for dissolution of the partnership between the plaintiff and the defendant. In that proceeding the state court had found a fiduciary relationship and acts which demonstrated fraud and defalcation. District Court Goettel affirmed saying "The bankruptcy judge correctly decided that the defalcation issue conclusively had been determined by the state court, and that appellant would be collaterally estopped from relitigating the matter in this proceeding." 94 B.R. at 301. The Court of Appeals affirmed without writing an opinion.

Since *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), collateral estoppel has been recognized as applicable to proceedings within the bankruptcy court's exclusive jurisdiction:

> This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.... If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [section of the Bankruptcy Act relevant to dischargeability] then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the Bankruptcy Court.

442 U.S. at 139 (n. 10), 99 S.Ct. at 2213 (n. 10).

Following *Brown,* writing for the Sixth Circuit, Circuit Judge Kennedy concluded:

Applying collateral estoppel is logically consistent with the Supreme Court decision in *Brown* and the exclusive jurisdiction of the bankruptcy courts while at the same time encouraging judicial economy ... that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts.

*Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981).

Thus, "although dischargeability determination is a legal one within the exclusive province of the bankruptcy court, to be made by applying the statute to the facts of the case, it does not follow that the bankruptcy court must relitigate the entire factual record. Those facts conclusively determined in an earlier proceeding involving identical issues, that were actually and necessarily litigated, should be given preclusive effect in making the requisite legal determination under section 523(a)(4)." *In re Stone*, 94 B.R. at 301.

■ For collateral estoppel to apply the following four-part test must be met:

(1) The issue sought to be precluded is the same issue as that involved in the proper action;

(2) The issue has actually been litigated;

(3) The issue has been determined by a valid and final judgment; and

(4) The determination was essential to the final judgment.

*In re Herman*, 6 B.R. 352, 360 n. 17 (S.D.N.Y.1980); *In re Allen*, 3 B.R. 355, 357–78 (Bankr.W.D.N.Y.1980); *In re Goux*, 72 B.R. at 358; *In re Overmyer*, 52 B.R. 111, 115 (Bankr.S.D.N.Y.1985); *Matter of Esposito*, 44 B.R. at 823; *In re Graziano*, 35 B.R. at 594.

■ A plea of guilty satisfies the requirement of litigation. *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987). "It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel ... in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case."

*United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978).

The Second Circuit has so recognized: "His plea of guilty, however, was an admission of all the elements of a formal criminal charge ... and was itself a conviction as conclusive as a jury verdict." *La Magna v. United States*, 646 F.2d 775, 778 (2d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981) (citations omitted). *See also, United States v. Frank*, 494 F.2d 145, 160 (2d Cir.), *cert. denied sub nom, Borgman v. United States*, 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974); *Appley v. West*, 832 F.2d 1021, 1026 (7th Cir.1987).

The law in New York is the same:

Furthermore, if a party pleads guilty in a criminal proceeding, his plea is given the same preclusive effect under collateral estoppel, as if after extensive litigation, he was convicted by a jury. (*Merchants Mut. Ins. Co. v. Arzillo*, 98 A.D.2d 495, 504, 472 N.Y.S.2d 97 (2nd Dep't 1984). Thus, a guilty plea may still satisfy the requirement of identity of issues. Although there has not been actual litigation of the essential issues and elements of the crime, the issues would have been necessarily judicially determined by the plea. Therefore the criminal conviction is conclusive proof of the underlying facts in a subsequent civil action and the defendant would be estopped from defending the issue of his liability. 98 A.D.2d at 505, 472 N.Y.S.2d 97.

In addition, a guilty plea satisfies the requirement of a full and fair opportunity to litigate. A defendant who knowingly and voluntarily pleads guilty to criminal charges has chosen not to "avail himself of the opportunity to contest the facts underlying the charge against him" 98 A.D.2d at 506, 472 N.Y.S.2d 97. He must accept the consequences of his action and "should not expect the courts to look behind convictions based on such pleas in order to relieve them from adverse civil consequences which may follow. As long as the guilty plea stands, the defendant is guilty and cannot be heard to say otherwise." 98 A.D.2d at 506, 472 N.Y.S.2d 97. Thus, a defendant

who pleads guilty may be said to have had a full and fair opportunity to litigate the prior determination with regard to invoking the doctrine of collateral estoppel.

*Gerney v. Tishman Const. Corp. of N.Y.*, 136 Misc.2d 1051, 518 N.Y.S.2d 564, 567 (Sup.Ct.New York County 1987).

Following these authorities, bankruptcy courts have denied dischargeability when the essential facts precluding discharge have been established by an earlier guilty plea in a criminal proceeding. *Matter of Esposito*, 44 B.R. at 823; *In re Goux*, 72 B.R. 355; *In re Dubuque*, 46 B.R. 156 (Bankr.N.H.1985); *In re Hopkins*, 82 B.R. 952, 955 (Bankr.N.D.Ill.1988). *Contra, In re Graziano*, 35 B.R. 589.

■ The debtor's plea of guilty to petit larceny in the state court established all the elements of embezzlement under Federal law. New York's Penal Law defines as "larceny" all forms of theft, including larceny by trespassory taking, larceny by trick, embezzlement or obtaining property by false pretenses. Section 155.05 It does so to simplify pleading and proof and to eliminate "sophistic technicalities". 39 McKinney's, Penal Law, Art. 155, Donnino, Practice Commentary.

Under New York Penal Law § 155.25 "A person is guilty of petit larceny when he steals property." Petit larceny differs from grand larceny only in the amount of money involved. §§ 155.30, 155.35, 155.40, 155.45.

Section 155.05 of New York Penal Law defines the crime of larceny as follows: "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from the owner thereof." A necessary element is an intent to deprive an owner of his property. *People v. Schmid*, 124 A.D.2d 896, 508 N.Y.S.2d 314 (App.Div.3rd Dep't. 1986), *appeal denied*, 69 N.Y.2d 955, 516 N.Y.S.2d 1039, 509 N.E.2d 374 (1987). By pleading guilty to larceny the debtor admitted that with intent to deprive the owners of the security deposits held by him and to appropriate such deposits to himself he wrongfully withheld such deposits from the owners thereof. He admitted that his intent was fraudulent. This is a square admission of the elements which constitute embezzlement under § 523(a)(4): (1) property of another was entrusted to the debtor; (2) the debtor appropriated the property for a use other than that for which it was entrusted; and (3) he did so with fraudulent intent.

The debtor's plea of guilty to petit larceny conclusively establishes that his debt to plaintiff is not dischargeable because it is the product of embezzlement. Collateral estoppel precludes relitigation and entitles the plaintiff to summary judgment. This is because the issues in this Court are the same issues as those involved in the state court proceeding; the issues were litigated; they were determined by a valid and final judgment and such determination was essential to the final judgment. *In re Wallace*, 840 F.2d 762, 764–65 (10th Cir.1988); *In re Stone, supra*, 94 B.R. at 301; *United States Life Title Ins. Co. v. Dohm, supra*, 19 B.R. at 138.

The same conclusion was reached on almost identical facts by Bankruptcy Judge Stephen D. Gerling in *In re Goux*, 72 B.R. 355 and his analysis and the authorities cited by him constitute square authority against the debtor.

### Defalcation

■ Jardula's debt to the plaintiff is also claimed to be nondischargeable on the ground that the debtor committed "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). This exclusion from dischargeability is not new to the Code but appears in the Code's predecessors. Section 17(a)(4) of the Bankruptcy Act of 1898, 11 U.S.C. § 35(a)(4), the predecessor of Section 523(a)(4), had almost identical language, excluding debts created by "defalcation while acting as an officer or in any fiduciary capacity." Case law interpreting the earlier statutes is, therefore, relevant.

In order to "not reach commercial debtor-creditor transactions in which the debtor merely violated the terms of his agreement with the creditor," the courts give a strict construction to the term fiduciary. *In re Levitan*, 46 B.R. 380, 385 (Bankr.E.D.N.Y.1985). It is to be confined to "technical trusts and not those which the law implies from the contract." *Chapman v. Forsyth*, 43 U.S. (2 How) 202, 207, 11 L.Ed. 236 (1844). The trust must exist prior to the act creating the debt and without reference to that act. *Upshur v. Briscoe*, 138 U.S. 365, 378, 11 S.Ct. 313, 318, 34 L.Ed. 931 (1891). A constructive trust is not sufficient to create a fiduciary relationship:

> It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto. In the words of Blatchford, J., "The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created."

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 154, 79 L.Ed. 393 (1934).

The question of who is a fiduciary for purposes of dischargeability in bankruptcy is one of federal law. However state law is important in determining when a trust in the strict sense required exists. It is "a factor in the equation used to determine whether the fiduciary requirement is satisfied as a matter of federal law, using federal standards." *In re Johnson*, 691 F.2d 249, 251, n. 2 (6th Cir.1982); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986); *In re Stone, supra*, 94 B.R. at 302.

> [S]tate law takes on importance in determining when a trust exists. The state may impose trust-like obligations on those entering into certain kinds of contracts, and these obligations may make a contracting party a trustee. Of course, the trust must arise prior to and without reference to the act creating the debt.

*In re Angelle*, 610 F.2d 1335, 1341 (5th Cir.1980).

"Under certain statutes, it is entirely fair to charge contractors with intent to create a trust simply because they have entered into a contract governed by a statute." *Angelle*, 610 F.2d at 1340. It is not only state statutes that are pertinent to whether a trust exists; decisional law is also relevant. *Ragsdale*, 780 F.2d at 796–97; *Stone*, 94 B.R. at 303. "An express technical trust can be imposed by virtue of the state's common law." *In re Thorsen & Co.*, 98 B.R. 527, 529 (Bankr.D.Col.1989).

There is more agreement on the basic principles than in the result of their application. Widely divergent results characterize the cases involving contractors subject to state regulation, principally those in the construction trade and insurance brokers.

But this case is not on the borderline nor does it require any fine analysis of the conflicting precedents. Jardula occupied the position of a fiduciary with respect to the plaintiff; the insurance deposits which he took came into his possession due to that fiduciary relationship; they constituted the res of an express trust; his failure to remit the deposits to plaintiff was a breach of that express trust. *In re Interstate Agency, Inc.*, 760 F.2d 121 (6th Cir. 1985); *Morgan v. American Fidelity Fire Ins. Co.*, 210 F.2d 53 (8th Cir.1954); *Matter of Whitlock*, 449 F.Supp. 1383, 1390 (W.D. Mo.1978).

Under New York's statutory and decisional law, an insurance broker is a fiduciary. New York considers the insurance broker to be a fiduciary for the insured with respect to all funds received or collected from the insurer so that unearned premiums returned to the insurance broker by the insurer for remittance to the insured are held by the broker as a fiduciary, and cannot be set off against money owed the agent by the insured. *Diesel Motors Co., Inc. v. Kaye*, 74 Misc.2d 302, 345 N.Y.S.2d 870 (Nassau County 1973).

Section 2120 of New York's Insurance Law (27 McKinney's (1985)) which is headed "Fiduciary capacity of insurance agents,

insurance brokers and reinsurance intermediaries" provides:

Every insurance agent and every insurance broker acting as such in this state shall be responsible in a fiduciary capacity for all funds received or collected as insurance agent or insurance broker, and shall not, without the express consent of his or its principal, mingle any such funds with his or its own funds or with funds held by him or it in any other capacity.

212 ¶ (a).

Identical language in a Pennsylvania statute has been held to make the failure of an insurance agent to remit received premiums to insurance company nondischargeable as a defalcation in a fiduciary capacity. *In re McCormick*, 70 B.R. 49 (Bankr.W.D.Pa.1987). Incorporation of similar language in a contract has alone been deemed sufficient to make the insurance agent a fiduciary. *Morgan v. American Fidelity Fire Ins. Co., supra.*

New York's statute has been supplemented by regulations which Jardula's attorneys have put before the Court. They are to be found in Part 20 of the New York Code, entitled "Brokers and Agents", issued pursuant to Section 125 of the Insurance Law, the predecessor of Section 2120.

After noting that every insurance agent "is responsible as a fiduciary for funds received by such agent", the New York Code regulates how such funds shall be held: (1) they are to be deposited in an account from which no withdrawals shall be made "other than for payment of premiums to insurance, [and] payment of return premiums to assureds," except that the agent may transfer to an operating account (i) interest, if the principals have consented thereto in writing and (ii) commissions or (iii) voluntary deposits, that is deposits in excess of aggregate net premiums received, made to maintain a minimum balance or to pay premiums due but uncollected. Even interest, commissions and voluntary deposits may not be withdrawn, however, if the balance remaining is less than the aggregate net premiums received but not remitted. Except for the deposits and withdrawals explicitly authorized the agent may not commingle any funds received, or collected, as agent or broker with his own funds or with funds held by him in any other capacity without the written consent of the person for whom they are held.

In evaluating whether Jardula was acting as a fiduciary, the regulations are to be considered. "The Court's task is to evaluate whether as a matter of *federal law* Debtor is acting in a fiduciary capacity in connection with the debt when it arose. In making this evaluation the Court must consider Debtor's actual obligations and duties under state law.... In other words the regulations spelled out the legal obligations Debtor owed when he received the premiums and failed to remit them to Coronet. There is no coherent argument for not considering these obligations in determining whether Section 523(a)(4) has been satisfied." *In re Blumberg*, 112 B.R. 236, 242 (Bankr.N.D.Ill.1990) (emphasis in original, footnote omitted).

Based on New York's statute and regulations, there was here both a fiduciary relationship and a trust res. The debtor was required under the regulations to keep the funds he received as premiums separate from his other funds and to use those funds only for designated purposes. The character of the fund as a trust, was not diminished by the fact that money could be withdrawn therefor for the debtor's commissions. The fact that it was necessary to spell out the debtor's limited right of invasion underscores the fact that the insurance proceeds were not his property with which he was free to do what he wanted. If that had been the case no permission would have had to be given him to withdraw his commissions.

But the facts in this case go beyond the express trust to be derived from the regulations. The unearned deposits came into the hands of Jardula for the purpose of remitting the same to the plaintiff. He received the money not as his own or for his own benefit, but for the benefit of the plaintiff. This relationship between Jardula and the plaintiff was not that of debtor and creditor, but that of agent and princi-

pal. The deposits were themselves a trust res.

For Jardula to do anything with the deposits but transmit them to plaintiff resulted in a nondischargeable debt, exactly as a real estate agent's misappropriation of specific funds (*Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir.1954)), a receiver's dissipation of the proceeds of a foreclosure sale (*Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir. 1937)), or a partner's diversion of partnership assets from his partner (*In re Stone, supra*).

It is likewise without legal significance for what purposes he used the insurance proceeds, whether it was for his own benefit or to strengthen his insurance agency. As long as the trust funds were used for any purpose other than that laid down in the statute there has been a defalcation. That Jardula may not have personally benefitted from the defalcation is of no legal consequence. It would be material only if he were being charged with breach of an implied trust as a corporate officer of corporate debts. It is not material where the debt is being claimed to be nondischargeable because of breach of an express trust by virtue of the pre-existing agency relationship between Jardula as insurance broker and plaintiff. *Matter of Banister*. 737 F.2d 225, 229 (2d Cir.1984), *cert. denied sub nom, Wachovia Bank & Trust Co. v. Banister*, 469 U.S. 1035, 105 S.Ct. 509, 83 L.Ed.2d 400 (1984), *citing and relying on In re Whitlock*, 449 F.Supp. 1383 (W.D.Mo. 1978).

The Court has reviewed all the cases cited by Jardula in which the specific state statute or contract involved has been found not to give rise to a fiduciary relationship. They are not persuasive. None involves facts as strong as those present here. They are all decisions by bankruptcy judges and bankruptcy judges tend to favor protecting the debtor's fresh start. In each of them the plaintiff was the insurer, not the insured, making it easier to find a debtor-creditor relationship. Typically, their denial of a fiduciary relationship, as in *Matter of McCraney*, 63 B.R. 64 (Bankr.N.

D.Ala.1986) is based on the absence of a segregated account, failure to define the res and to spell out fiduciary duties. 63 B.R. at 67. An express trust can exist nevertheless as is shown by the fact that the statutes held to give rise to an express trust in *Carey Lumber v. Bell*, 615 F.2d 370 (5th Cir.1980) and *In re Johnson*, 691 F.2d 249 (6th Cir.1982), do not expressly obligate the fund holder to maintain the separate identity of any trust res, do not require the segregation of funds and do not enforce a bookkeeping obligation, yet the absence of such requirements did not preclude the finding of an express trust. *In re Baird*, 114 B.R. 198, 203 (9th Cir. BAP 1990). An equal or greater number of bankruptcy judges who have had occasion to review a statute similar to the one present here have found a fiduciary relationship to exist. *In re Livingston*, 40 B.R. 1018 (E.D.Mich.1984) (Held that a Michigan statute created the requisite trust relationship); *Matter of Nicholson*, 55 B.R. 645 (Bankr.N.D.Ga.1985) (same result reached based on a Georgia statute); *In re Gagliano*, 44 B.R. 259 (Bankr.N.D.Ill.1984) (Illinois insurance code held to create express trust making failure to remit premiums result in a nondischargeable debt); *In re Feldman*, 85 B.R. 163 (Bankr.S.D.Fla. 1988) (Florida statute made agent fiduciary); *Matter of Good*, 33 B.R. 163 (Bankr. M.D.Fla.1983) (Florida Law); *In re Blumberg, supra* (Under Illinois law insurance agent was acting in a fiduciary capacity); *In re McCormick, supra* (Pennsylvania law).

Having regard not to the number of cases on each side, but to basic principles, Jardula was acting in a fiduciary capacity when, as he admitted by his plea of guilty in the state court, he withheld from the plaintiff the funds he had received to transmit to plaintiff. His plea establishes his defalcation and makes his debt to the plaintiff nondischargeable.

### CONCLUSIONS

1. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core

proceeding in accordance with 28 U.S.C. § 157(b)(2)(I).

2. Because the Court finds that the debtor's plea of guilty to stealing the deposits giving rise to his debt to the plaintiff collaterally estops him as to the ultimate facts at issue so that there are no disputed facts as to the nondischargeability of the plaintiff's claim based on the debtor's embezzlement, summary judgment is granted in favor of plaintiff.

3. Because the Court finds that the undisputed facts establish that the debtor's debt to the plaintiff arose from the debtor's defalcation of insurance deposits while acting as a fiduciary for the plaintiff, summary judgment is granted in favor of plaintiff.

4. The debtor's debt to the plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) because it is (1) due to embezzlement and (2) the result of the debtor's fraud and defalcation while acting in a fiduciary capacity.

Settle Order on notice in accordance with the foregoing Opinion.