**In re Gary WALTRIP, Debtor.**

**David D. TOBKIN, Plaintiff/Appellant,**

v.

**Gary WALTRIP, Defendant/Respondent.**

No. C–90–20106–DLJ.

Adv. No. 4–89–0198–AJ.

United States District Court, N.D. California.

Aug. 1, 1991.

Gary Waltrip, pro se.

William K. Wilburn, A Professional Law Corp., San Jose, Cal., for Tobkin.

## ORDER

JENSEN, District Judge.

This is an appeal brought pursuant to 28 U.S.C. section 158(a) of the December 26, 1989 Decision of the Bankruptcy Court of the Northern District of California allowing the dischargeability of debts arising out of an accountancy partnership dissolution. Appellant David D. Tobkin contends that the bankruptcy court committed reversible error in ruling that the debts were not nondischargeable pursuant to 11 U.S.C. § 523(a). For the following reasons, the Court hereby AFFIRMS the order of the bankruptcy court.

## I. BACKGROUND

The parties in this action are former partners in a public accounting practice. Initially, the appellant, David D. Tobkin ("Tobkin"), owned a 30% interest and Brad Lighty ("Lighty") owned a 70% interest in the public accounting partnership of Lighty & Tobkin. In early 1979, Tobkin approached the respondent, Gary Waltrip ("Waltrip"), about purchasing a portion of Lighty's share of the partnership. In June of 1979, Tobkin and Waltrip entered into a partnership agreement for the practice. Waltrip gave Lighty a second deed of trust on Waltrip's residence in the amount of $42,000 in exchange for the title to cash, prepaid expenses, and used office furniture and equipment worth $7,000. The equity of the partnership at that time was valued at $20,000. *See* Partnership Agreement between Tobkin and Waltrip at 3, clause 1 (dated June 30, 1979) (exhibit 1) [hereinafter Partnership Agreement]. Therefore, Waltrip purchased a 35% interest in the

firm. The remaining $35,000 paid by Waltrip was for the purchase of goodwill (*i.e.*, accounting and tax clients) from Lighty. Tobkin purchased Lighty's remaining 35% interest in the partnership so that Tobkin owned a 65% interest in the partnership.

The partnership agreement contained a "buy-out" clause that provided for the terms of sale of one partner's interest in the firm to the other partner. The buy-out clause stated: "In the event of disagreement between the partners, each partner will have first right to buy[,] with 60 days notice to the outgoing partner. Payment to be 20% down, balance over 48 months plus interest at prime + 1%." Partnership Agreement at 2, clause 4. The partnership agreement also provided for the method of calculating the purchase price of the partnership interest in the event of a sale between the partners. The agreement stated: "Any buy or sell will be 100% of the most recent annual billings to the nearest month end, times the partner's equity percentage owned, plus the partner's capital account at that month end." *Id.* at 1, clause 3. The partnership agreement did not expressly prohibit dissolution by either partner.

In November of 1980, Waltrip offered to sell his 35% interest in the partnership to Tobkin because Waltrip felt that he was not making a sufficient living from the partnership and because he believed that Tobkin was negligent in his professional conduct. Tobkin rejected Waltrip's offer to sell. The partnership continued until May 3, 1982, when Waltrip gave Tobkin notice that he was dissolving the partnership. Tobkin asked to purchase Waltrip's interest in the partnership under the buy-out provision after Waltrip notified Tobkin that he was dissolving the partnership. Waltrip refused to sell his interest in the partnership and proceeded to dissolve the partnership.

A dispute arose between Tobkin and Waltrip as to the meaning of the buy-out provision in the partnership agreement. Tobkin maintained that the buy-out provision was mandatory and that, since a disagreement had arisen between the partners, Waltrip was required to sell his interest in the partnership to Tobkin. Waltrip argued that the buy-out provision only gave the partners the right of first refusal if one partner chose to sell his interest in the partnership, but that the provision did not *require* Waltrip to sell his interest.

As part of the dissolution, Waltrip took approximately $16,000 of tangible assets and accepted approximately $80,000 in liabilities. Waltrip failed to deposit $8,804 in checks from clients into the partnership account just prior to his notice to Tobkin of the dissolution so that he would have working capital to begin his own practice immediately after the dissolution. Waltrip eventually deposited this money into the partnership account and withdrew half for himself and left half for Tobkin.

Tobkin filed an action in the Superior Court of Santa Clara County seeking a partnership accounting and damages on various theories. In March of 1987, the state court entered an interlocutory judgment holding that Waltrip was overdrawn on his capital account in the amount of $32,595 and that Waltrip owed this amount to Tobkin. The state court also found that Waltrip was guilty of breach of fiduciary duty and constructive fraud based on two findings of fact: (1) that Waltrip delayed the deposit of $8,804 in client's payments into the partnership account, and (2) that Waltrip attempted to solicit partnership clients for his new practice prior to the dissolution of Tobkin's and Waltrip's partnership. The state court rejected Tobkin's argument that the buy-out clause in the partnership agreement was mandatory and found that each partner was entitled to dissolve the partnership instead of selling their interest to the other partner.

Shortly thereafter, Waltrip filed for bankruptcy in the United States Bankruptcy Court for the Northern District of California. In January of 1988, Tobkin commenced an adversary proceeding related to the bankruptcy case filed by Waltrip contesting the dischargeability of the debt Waltrip owed to Tobkin as a result of the interlocutory judgment entered by the state court. Tobkin alleged that Waltrip's

debt to Tobkin was nondischargeable because the debt falls under the exceptions for dischargeable debts under 11 U.S.C. section 523. Specifically, Tobkin relies on the provisions in section 523 that provide that a debt is not dischargeable if it is a result of fraud, fiduciary defalcation, or willful and malicious injury. 11 U.S.C. § 523(a)(2)(A), (3) & (6).

The bankruptcy court entered judgment in favor of Waltrip, finding that Waltrip's debt to Tobkin was dischargeable. *See Tobkin v. Waltrip*, No. 4–89–0198 (Bankr. N.D.Cal. Dec. 26, 1989) [hereinafter Bankruptcy Decision]. Tobkin now appeals that decision, requesting that it be reversed and that this Court grant judgment for appellant in the amount of $636,057.00 and punitive damages of $265,000.00.

## II. STANDARD OF REVIEW

A district court reviews de novo the bankruptcy court's conclusions of law and only those findings of fact which are clearly erroneous. *In re Globe Investment and Loan Co., Inc.*, 867 F.2d 556, 559 (9th Cir. 1989); *In re Wolf & Vine*, 825 F.2d 197, 199 (9th Cir.1987); *see also* Bankruptcy Rule 8013.

## III. DISCUSSION

Tobkin contends that the bankruptcy court erred in holding that it was not bound by the prior state court judgment finding that Waltrip was guilty of constructive fraud and breach of fiduciary duty, and that the evidence presented in the underlying adversary proceeding, in conjunction with the state court's rulings, established that the debt owed to Tobkin was not dischargeable pursuant to section 523. The Court examines each of these arguments in turn.

### A. *Effect of the prior state court ruling.*

■ Tobkin argues that the bankruptcy court was bound under res judicata by the state court's findings that Waltrip was guilty of breach of fiduciary duty and constructive fraud. Tobkin relies on *In re Stone*, 94 B.R. 298 (S.D.N.Y.1988), to support the proposition that the state court's

rulings amount to a finding of fiduciary defalcation under section 523(a)(4) and result in res judicata on that issue. In *Stone*, the state court had found that an accounting was justified because the defendant had breached his fiduciary duty and misappropriated partnership assets. The bankruptcy court then held that a breach of fiduciary duty is equivalent to fiduciary defalcation of assets under section 523(a)(4) and that this issue was precluded from relitigation under res judicata. *See id.* Therefore Tobkin concludes that the state court's decision in this action renders Waltrip's debt to Tobkin nondischargeable as a result of fiduciary defalcation under section 523(a)(4) and the bankruptcy court was collaterally estopped from finding otherwise.

The bankruptcy court responded to this argument in its decision by stating that the bankruptcy court has exclusive jurisdiction over the issue of dischargeability of a debt. *See* Bankruptcy Decision at 5 (citing 11 U.S.C. § 523(c); *In re Daley*, 776 F.2d 834, 839 (9th Cir.1985)). Therefore, the bankruptcy court held that a pre-bankruptcy judgment is not res judicata on the issue of dischargeability. *Id.* (citing *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). The bankruptcy court stated that it may consider "all relevant evidence" in making its determination as to the dischargeability of a debt, including any evidence presented at the dischargeability trial. *Id.* (citing *In re Houtman*, 568 F.2d 651, 654 (9th Cir.1978); *In re Rahm*, 641 F.2d 755 (9th Cir.1981)). The bankruptcy court said that a finding of fact of the state court may be presented as prima facie evidence, however collateral estoppel did not bar the court from considering "all relevant evidence" for purposes of its findings of fact. *Id.* (citing *In re Daley*, 776 F.2d at 838).

■ The bankruptcy court's conclusion of law regarding the res judicata effect of the state court's findings is correct. The bankruptcy court is not collaterally estopped from finding that Waltrip is not guilty of fiduciary defalcation. Although Tobkin relies on *In re Stone* to support his

argument for res judicata on the issue of fiduciary defalcation, the court in *Stone* noted that

> "whether or not a judgment ought to be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."

*Stone*, 94 B.R. at 301–01 (quoting *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961) *cert. denied sub nom., Dawson v. Lummus Co.*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962)). Thus if the bankruptcy court found that a decision on an issue was not final and did see a good reason for permitting the relitigation of an issue, it retained the discretion to do so and was not bound by res judicata.

In this action, the state court decision was an interlocutory judgment, not a final determination of the action. Therefore, the decision was arguably tentative. In addition, Waltrip argues that he moved for a new trial, but it was denied because the state court held that a motion for a new trial could not be heard until the second phase of the trial had been heard. Instead, Waltrip brought this action in bankruptcy court in order to avoid the state court judgment. Therefore, the state court decision was never reviewed. Finally, Waltrip introduced new evidence at the bankruptcy proceedings countering the evidence offered in the state court litigation on the issues of breach of fiduciary duty and constructive fraud. This may have convinced that court below that good reason existed for relitigating the findings of the state court. As a result, the bankruptcy court properly found that the issue of fiduciary defalcation had not been finally determined and that the bankruptcy court was not collaterally estopped from making its own findings on the issue of fiduciary defalcation.

## B. The bankruptcy court's findings of fact.

Tobkin argued in his complaint filed in bankruptcy court that Waltrip's debt was nondischargeable because it was a result of fraud within the meaning of section 523(a)(2)(A), fiduciary defalcation or fraud within the meaning of section 523(a)(4), and willful and malicious injury within the meaning of section 523(a)(6). The Court examines each of these arguments in turn.

### 1. Fraud under section 523(a)(2)(A).

■ The bankruptcy court points out that the state court found Waltrip guilty of constructive fraud; however, constructive fraud does not render a debt nondischargeable under section 523(a)(2)(A). *See* Bankruptcy Decision at 5. Instead, the bankruptcy court held that only fraud involving bad faith or immorality meets the statutory requirement. *Id.* (citing *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1877); 3 *Collier on Bankruptcy* ¶ 523.08(5), at 523–52 (15th ed.)). Therefore, Tobkin had the burden of proving his claim that Waltrip was guilty of fraud involving bad faith or immorality at the bankruptcy trial on dischargeability.

■ Tobkin based his argument of fraud in the bankruptcy proceeding on the theory that Waltrip entered into the partnership agreement without intending to follow its provisions. Specifically, Tobkin claims: (1) that the buy-out provision of the partnership agreement is mandatory and that dissolution was not an option under the agreement; (2) that Waltrip admits that he had no intention of honoring the buy-out clause at the time that he signed the partnership agreement; (3) that Waltrip failed to tell Tobkin that he did not intend to honor the buy-out clause; and (4) that Waltrip is therefore guilty of promissory fraud.

The bankruptcy court found overwhelming evidence to the contrary of Tobkin's contentions. The bankruptcy court found that the purpose of the buy-out clause was to prevent the partners from selling their interest to third parties without first offer-

ing the interest to the other partner. The bankruptcy court further found that the buy-out clause did not force the sale of an interest if the partner did not choose to sell. In addition, the court found that, since the partnership agreement did not expressly prohibit dissolution, each partner had a right to dissolve the partnership instead of selling their interest to the other partner. Indeed, even the state court found that the dissolution was allowed under the partnership agreement.

The bankruptcy court found no evidence that Waltrip was aware that Tobkin believed the buy-out provision to be mandatory at the time that the partners signed the agreement. The bankruptcy court also found no evidence that Waltrip did anything to mislead Tobkin, that Waltrip entered into the partnership intending to terminate or dissolve it, that Waltrip ever offered to sell the partnership to a third party, or anything else actionable under section 523(a)(2)(A).

Tobkin has not offered any argument on this appeal to indicate that Waltrip was not guilty of fraud within the meaning of section 523(a)(2)(A), and the lack of evidence described by the bankruptcy court to establish the elements of fraud supports the bankruptcy court's finding that there was no such fraud. Therefore the Court finds that the lower court's findings of fact were not "clearly erroneous" on the issue of fraud under section 523(a)(2)(A).

2. Fiduciary defalcation and willful and malicious injury under section 523(a)(4) and (6).

■ Tobkin based his claims of fiduciary defalcation and fraud under section 523(a)(4) and willful and malicious injury under section 523(a)(6) on the theory that Waltrip improperly solicited partnership clients prior to the dissolution of the partnership and ended up with more than his fair share of the clients. Tobkin also argues that withholding the $8,804 in client fees prior to the partnership supports these claims.

Tobkin's only evidence to support his claim that Waltrip improperly solicited clients or employees was the testimony of Gregory Kelly ("Kelly"). Waltrip argues that the reason he moved for a new trial in the state court proceedings was because Tobkin produced Kelly as a surprise witness at trial. In the state court proceedings and in the bankruptcy proceedings, Kelly testified that prior to the dissolution of the partnership, Waltrip met with partnership clients and: (1) disparaged the work of Tobkin; (2) informed the clients that Waltrip was going to start his own firm; (3) solicited the clients to go with Waltrip into his new firm; and (4) promised to do the work at a cheaper price. Waltrip claims that this testimony was a complete surprise in the state court proceedings because Tobkin and Kelly never revealed this information during discovery. Waltrip argues that the state court's decision finding Waltrip guilty of breach of fiduciary duty and constructive fraud was based upon Kelly's testimony.

At the dischargeability trial, Waltrip offered the testimony of the clients that Kelly claimed Waltrip solicited. The clients denied that Waltrip ever criticized Tobkin's work or attempted to solicit them for Waltrip's new practice prior to the dissolution of the partnership. Waltrip argued that Kelly was a biased witness because he was a former employee of the partnership and Waltrip had fired him for negligent work. The bankruptcy court found that Kelly's testimony had been impeached. The bankruptcy court concluded that Tobkin had failed to establish that Waltrip wrongfully solicited clients.

■ The bankruptcy court also found that the fact that Waltrip withheld the $8,804 in clients fees prior to dissolution did not establish fiduciary defalcation, fraud, or willful and malicious injury within the meaning of section 523. The bankruptcy court found that Waltrip ultimately deposited this money into the partnership account and divided it equally between Tobkin and himself. Thus Tobkin could prove no damages as a result of these actions. Since Tobkin was not damaged as a result of Waltrip's withholding the fees, he could not use it as a basis for establishing the

fiduciary defalcation, fraud, or willful and malicious injury.

Tobkin has failed to show that the bankruptcy court's finding that Waltrip was not guilty of fiduciary defalcation, fraud, or willful and malicious injury was erroneous. Tobkin's only witness on the issues of fiduciary defalcation, fraud, and willful and malicious injury was completely impeached at trial and Tobkin has not pointed to any other evidence that supports his claims. Therefore, again, the Court is unable to find any error in the lower court's finding, and certainly not that such findings were "clearly erroneous."

## IV. CONCLUSION

For the reasons stated above, the Court hereby AFFIRMS the U.S. Bankruptcy Court's Decision of December 26, 1989, filed in adversary proceeding No. 4–89–0198–AJ.

IT IS SO ORDERED.