985 F.2d 574
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David D. TOBKIN, Plaintiff-Appellant,
v.
Gary WALTRIP, Defendant-Appellee.
 No. 91-16401.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 16, 1992.
Decided Jan. 22, 1993.
 
 Appeal from the United States District Court for the Northern District of California, No. CV-90-20106-DLJ; D. Lowell Jensen, District Judge, Presiding.
 N.D.Cal., 139 B.R. 492
 AFFIRMED.
 Before HUG, PREGERSON and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 This is an appeal from the district court's affirmance of a bankruptcy court's decision allowing the discharge of debt arising out of an accountancy partnership dissolution. Appellant David D. Tobkin contends that the district court and bankruptcy court committed reversible error in concluding that the debt was not nondischargeable pursuant to 11 U.S.C. § 523(a). The district court had jurisdiction pursuant to 28 U.S.C. § 158(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 In June of 1979, David D. Tobkin and Gary Waltrip entered into a partnership agreement for the public accounting practice of Lighty & Tobkin. Ultimately, Waltrip came to own a 35% interest in the partnership and Tobkin a 65% interest.
 
 
 4
 The partnership agreement between Tobkin and Waltrip contained a buy-out provision that provided for the terms of sale of one partner's interest in the firm to the other partner. The buy-out provision stated:
 
 
 5
 Any buy or sell will be 100% of the most recent annual billings to the nearest month end, times the partner's equity percentage owned, plus the partner's capital account at that month end.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 In the event of disagreement between the partners, each partner will have first right to buy; with 60 days notice to the outgoing partner. Payment to be 20% down, balance over 48 months plus interest at prime plus 1%.
 
 
 9
 The partnership agreement did not expressly prohibit dissolution by either partner.
 
 
 10
 In November of 1980, because of dissatisfaction with his earnings and with Tobkin's professional conduct, Waltrip offered to sell his 35% interest in the partnership to Tobkin. Tobkin refused this offer.
 
 
 11
 During the next year, Waltrip's dissatisfaction with the partnership and Tobkin's conduct, particularly his bidding practices and a personal relationship he had developed with an employee, increased. Accordingly, on May 3, 1982, Waltrip gave Tobkin notice that he was dissolving the partnership. Tobkin asked to purchase Waltrip's interest in the partnership under the buy-out provision. Waltrip refused and proceeded with dissolution.
 
 
 12
 As part of the dissolution, Waltrip took approximately $16,000 of tangible assets and accepted approximately $80,000 in liabilities. Waltrip failed to deposit $8,804 in checks from clients into the partnership account just prior to his notice to Tobkin of the dissolution. However, Waltrip eventually deposited the money into the partnership account and withdrew half for himself and left half for Tobkin. Waltrip also unilaterally sent letters to a number of firm clients informing them of the dissolution. Several clients and employees elected to join Waltrip in his personal post-dissolution accounting practice.
 
 
 13
 In response, Tobkin filed an action against Waltrip in the Santa Clara County Superior Court seeking a partnership accounting and damages from Waltrip on various theories. In March of 1987, the state court entered an interlocutory judgment holding that Waltrip was overdrawn on his capital account in the amount of $32,595 and that Waltrip owed this amount to Tobkin. The state court also found that Waltrip had breached his fiduciary duty and committed constructive fraud.
 
 
 14
 Shortly thereafter, Waltrip filed for bankruptcy. In January of 1988, Tobkin commenced an adversary proceeding related to the bankruptcy case filed by Waltrip contesting the dischargeability of the debt Waltrip owed to Tobkin as a result of the interlocutory judgment entered by the state court. Tobkin alleged that Waltrip's debt was nondischargeable under 11 U.S.C. § 523. Specifically, Tobkin relied on provisions in § 523 that provide that a debt is not dischargeable if it is the result of fraud, fiduciary defalcation, embezzlement, larceny, or willful and malicious injury. 11 U.S.C. § 523(a)(2)(A), (3) and (6) (1986). The bankruptcy court entered judgment in favor of Waltrip, and the district court affirmed.
 
 DISCUSSION
 
 15
 A. Standards of Review.
 
 
 16
 Because we are in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court's decision. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). Thus, we review the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. In re Kirsh, 973 F.2d 1454, 1456 (9th Cir.1992).
 
 B. Merits
 
 17
 1. Res Judicata Effect of State Court Proceedings
 
 
 18
 Tobkin argues that the bankruptcy court was bound under res judicata by the state court's findings that Waltrip had breached his fiduciary duty and committed constructive fraud. This argument is in error.
 
 
 19
 Bankruptcy courts have exclusive jurisdiction to determine the dischargeability of debts alleged to be excluded from the debtor's discharge. In re Daley, 776 F.2d 834, 839 (9th Cir.1985), cert. denied, 476 U.S. 1159 (1986); In re Houtman, 568 F.2d 651, 653-54 (9th Cir.1978). Accordingly, the pre-bankruptcy judgment of the state court is not res judicata on the issue of dischargeability. See, e.g., In re Comer, 723 F.2d 737, 740 (9th Cir.1984) ("Res judicata should not be applied to bar a claim by a party in bankruptcy proceedings, nor should a bankruptcy judge rely solely on state court judgments when determining the nature of a debt for purposes of dischargeability, if doing so would prohibit the bankruptcy court from exercising its exclusive jurisdiction to determine dischargeability.").
 
 2. Objections to Dischargeability
 
 20
 Tobkin's primary challenge is to the bankruptcy court's determination that the debt in this case is not excepted from discharge by 11 U.S.C. § 523(a)(2)(A), (4) or (6).
 
 
 21
 a. Section 523(a)(2)(A) Fraud
 
 
 22
 Section 523(a)(2)(A) provides that an individual debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2)(A) (1986).
 
 
 23
 Tobkin argues that Waltrip's debt in this instance is nondischargeable pursuant to § 523(a)(2)(A) because Waltrip entered into the partnership agreement without intending to follow its provisions. Specifically, Tobkin claims: (1) that the buy-out provision of the partnership agreement is mandatory and that dissolution was not an option under the agreement; (2) that Waltrip admits that he had no intention of honoring the buy-out clause at the time that he signed the partnership agreement; (3) that Waltrip failed to tell Tobkin that he did not intend to honor the buy-out clause; and (4) that Waltrip is therefore guilty of promissory fraud.
 
 
 24
 Importantly, both the bankruptcy court and the district court clearly rejected Tobkin's construction of the buy-out provision. The bankruptcy court found that the purpose of the provision was to preclude a partner from selling his interest to a third party without first offering that interest to the other partner, but not to force any sale of an interest if the partner did not choose to sell. In addition, the bankruptcy court found that the partnership agreement did not prevent either party from dissolving the partnership, even if there had been a demand by one partner to buy the other's interest following a disagreement.
 
 
 25
 Moreover, the bankruptcy court found no evidence that Waltrip was aware that Tobkin believed the buy-out provision to be mandatory at the time the partners signed the agreement. The bankruptcy court also found no evidence that Waltrip did anything to mislead Tobkin regarding his understanding of the buy-out provision, that Waltrip entered into the partnership intending to terminate or dissolve it at a later date, or that he ever offered his partnership interest for sale to a third party.
 
 
 26
 Tobkin offers no evidence or argument not considered by the bankruptcy or district court to support his argument that Waltrip was guilty of fraud within the meaning of § 523(a)(2)(A). Instead, Tobkin merely relies on his twice rejected construction of the buy-out provision. Because the bankruptcy court's findings regarding the proper construction of the buy-out provision are not clearly erroneous, we affirm. Accordingly, Tobkin's claim of § 523(a)(2)(A) fraud fails.
 
 
 27
 b. Section 523(a)(4) Fraud, Defalcation, Embezzlement, or Larceny
 
 
 28
 Tobkin next contends that Waltrip's debt is not dischargeable because Waltrip committed fraud, defalcation while acting in the capacity of a fiduciary, embezzlement, or larceny within the meaning of § 523(a)(4). Tobkin bases these claims on the theory that Waltrip improperly solicited partnership clients prior to the dissolution of the partnership and ended up with more than his fair share of the clients. Tobkin also argues that Waltrip's withholding of the $8,804 in client fees prior to the dissolution supports these claims.
 
 
 29
 Although it is clear that a fiduciary relationship existed between Tobkin and Waltrip, see, e.g., In re Short, 818 F.2d 693, 695 (9th Cir.1987) ("In Haller, we applied California statutory and case law to determine that partners under California law are fiduciaries under section 523(a)(4)."), beyond that, Tobkin is unable to make the requisite showing under § 523(a)(4). The only evidence proffered by Tobkin to support his claim that Waltrip improperly solicited clients or employees was the testimony of Gregory Kelly. In both the state and bankruptcy court proceedings, Kelly testified that prior to the dissolution of the partnership, Waltrip met with two partnership clients, Benassi and Johnson, and made disparaging comments about Tobkin's work, informed the clients of the impending dissolution, solicited the clients for Waltrip's new independent firm, and promised work at a cheaper price. Kelly also testified that Waltrip previously had advised him of his intention to dissolve the partnership and of his desire to hire Kelly after such dissolution.
 
 
 30
 Neither Benassi nor Johnson testified in the state court proceeding, but both testified before the bankruptcy court. During this testimony, both denied having been solicited prior to the May 3, 1982, dissolution of the partnership. Both denied having any advance knowledge of Waltrip's plan for dissolution and testified that they first learned of any problem between Tobkin and Waltrip upon receiving Waltrip's letter announcing the dissolution. Finally, both denied being a party to any disparaging remarks by Waltrip regarding Tobkin. Furthermore, Waltrip alleged that Kelly was a biased witness because Waltrip previously had notified Kelly that he was dissatisfied with Kelly's work and advised Kelly to seek other employment.
 
 
 31
 Abiding by its duty to consider "all relevant evidence", see, e.g., In re Houtman, 568 F.2d at 654 ("What is required is that the bankruptcy court consider all relevant evidence, including the state court proceedings, that is offered by the parties, or requested by the court, and on the basis of that evidence determine the nondischargeability of judgment debts...."), and based on the testimony of Benassi and Johnson and the taint on Kelly's testimony, the bankruptcy court concluded that Tobkin had failed to establish that Waltrip wrongfully solicited clients or otherwise wrongfully depleted the firm's client pool. Because this factual finding is not clearly erroneous, we affirm.
 
 
 32
 Moreover, with respect to Tobkin's allegations regarding the partnership monies, the bankruptcy court found that the evidence showed that in April of 1982, Waltrip took sole possession of checks totalling $8,804 in client fees, that Waltrip did not inform Tobkin that he had the monies, and that Waltrip intentionally delayed the deposit of the checks into the firm's account for periods of from one to thirty days. Ultimately, however, these proceeds were deposited to the firm's account and divided equally between Tobkin and Waltrip. Accordingly, with respect to the partnership monies, Tobkin cannot show either that any debt was created by the withholding of fees or that he was injured by Waltrip's actions.
 
 
 33
 Tobkin further contends that Waltrip is guilty of § 523(a)(4) larceny or embezzlement, which would render the debt in this case nondischargeable. Tobkin contends that Waltrip is guilty of larceny by the trick and device of signing the partnership agreement without intending to honor the buy-out provision. We earlier affirmed the bankruptcy court's rejection of Tobkin's construction of the buy-out provision. Accordingly, Tobkin cannot anchor a larceny claim in his rejected construction.
 
 
 34
 Embezzlement in the context of nondischargeability requires three elements: (1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than that to which it was entrusted; and (3) circumstances indicating fraud. In re Littleton, 942 F.2d 551, 555 (9th Cir.1991). The bankruptcy court concluded that, with the possible exception of Waltrip's delay in depositing the client checks, no evidence was presented to support Tobkin's embezzlement claim. Because that finding is not clearly erroneous, we affirm. With respect to the partnership monies, in In re Littleton the court inquired into whether the debtor intended to defraud the creditor in proving the embezzlement claim, as required by California law, and concluded:
 
 
 35
 Whether the debtor intended to defraud [the creditor] is a question of fact. The bankruptcy court held that [the creditor] did not meet its burden of proof on the embezzlement claim.
 
 
 36
 Id. at 556. Here, Tobkin has offered no evidence on intent to defraud. He has thus failed to meet his burden of proof on the embezzlement claim.
 
 
 37
 c. Section 523(a)(6) Willful or Malicious Injury
 
 
 38
 Finally, Tobkin contends that Waltrip is guilty of § 523(a)(6) willful or malicious injury. Section 523(a)(6) provides that a debt for "willful and malicious injury by the debtor" will not be discharged. 11 U.S.C. § 523(a)(6) (1986). In In re Britton, 950 F.2d 602 (9th Cir.1991), this court illuminated the showing required under this section:
 
 
 39
 "Willful," in this context, means "deliberate or intentional." Thus, the creditor must show the debtor acted intentionally. The intent required is intent to do the act at issue, not intent to injure the victim. To prove malice ... the creditor must show "the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor." [Moreover,] "[a]s set forth in Cecchini, the act must necessarily cause harm to the creditor, but the creditor need not show that the debtor acted with an intent to harm the creditor."
 
 
 40
 Id. at 605 (citations omitted). Because Waltrip did not improperly solicit clients and ultimately returned the partnership monies, Waltrip cannot show § 523(a)(6)'s requisite harm.
 
 CONCLUSION
 
 41
 Accordingly, the bankruptcy court's conclusions that it was not bound by the state court judgment as res judicata and that the § 523 exceptions to dischargeability do not apply in this case are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3