**Robert ZOHLMAN, Plaintiff–Appellant,**

v.

**Alex Mayard ZOLDAN, Defendant–Appellee.**

**No. 98 Civ. 3592(WCC).**

United States District Court,
S.D. New York.

Nov. 13, 1998.

Hershman & Leicher, P.C. (Harold M. Hershman, Michael L. Steindam, of counsel), New York City, for Plaintiff–Appellant.

Law Offices of Jeffrey L. Sapir (Jeffrey L. Sapir, of counsel), White Plains, NY, for Defendant–Appellee.

### *OPINION AND ORDER*

CONNER, Senior District Judge.

This bankruptcy appeal presents the following issues, under 11 U.S.C. § 523(a)(4) of the Bankruptcy Code: (1) whether obtaining

a judgment in state court by the creditor against the debtor should have collaterally estopped the debtor from litigating certain issues in Bankruptcy Court; (2) whether a general partner stands in a fiduciary relationship with his/her limited partners, and; (3) what conduct constitutes defalcation for purposes of the Bankruptcy Code.

## BACKGROUND

In May of 1981, Plaintiff–Appellant Robert Zohlman (hereafter "Creditor") and Defendant–Appellee Alex Mayard Zoldan (hereafter "Debtor") executed an Amended and Restated Certificate of Limited Partnership and an Amended and Restated Agreement of Limited Partnership of New City Associates (the "Partnership Agreement"), to acquire and renovate an existing office building located at 120 North Main Street, New City, New York (the "Office Building"). Debtor was the sole general partner of the partnership. Creditor had the largest investment of the six limited partners involved in the transaction.

Upon the renovation and sale of the Office Building, Creditor commenced an action in the Supreme Court of the State of New York, County of Westchester, against Debtor in the form of a special proceeding for an accounting, to which Debtor consented. Justice Harold L. Wood then appointed a Referee pursuant to N.Y. C.P.L.R. § 4311 to supervise the auditing and examination of the books and records of the partnership. The Referee's Report focused on fifteen specific items, lettered "A" through "O," which were disputed partnership expenses totaling $502,766. The Referee's Report was approved by Justice Wood, who, on October 13, 1992, entered judgment in the amount of $304,371.78 in favor of Creditor.[1] The table included below, drawn from the Referee's Report, sets forth the categories of items in dispute, the amounts claimed by Creditor, and the amounts awarded by the Referee.

| Item | Description | Claimed by Zohlman | Awarded by Referee |
|------|-------------|-------------------:|-------------------:|
| A. | Management fees (those in excess of 4%) | $ 8,537 | $ 8,537 |
| B. | Mortgage Fee | 15,000 | 15,000 |
| C. | Commission on sale of building | 75,000 | 75,000 |
| D. | Construction | 92,897 | 92,897 |
| E. | Lease Commissions | 32,498 | 0 |
| F. | Outside labor | 136,603 | 104,399 |
| G. | Salaries | 17,055 | 17,055 |
| H. | Payroll taxes | 2,434 | 0 |
| I. | Building cleaning and maintenance | 12,952 | 10,452 |
| J. | Maintenance fees | 27,188 | 27,188 |
| K. | Professional fees | 9,448 | 7,948 |
| L. | Miscellaneous | 5,556 | 5,556 |
| M. | Repairs | 29,946 | 29,946 |
| N. | Sundry | 6,069 | 6,049 |
| O. | Improvements | 31,583 | 21,158 |
| | Total not agreed | $502,766 [2] | |
| | Total claims allowed | | $421,185 [3] |

On May 8, 1996 Debtor filed a petition under Chapter 7 in the Bankruptcy Court for the Southern District of New York. In response, Creditor then sought a determination

---

1. This number reflects an adjustment of the $421,185 awarded by the Referee based on specific provisions in the Partnership Agreement.

2. The Referee's tally of this column of $503,216 in error.

3. The Referee's tally of this column of $421,205 in error.

that the state court judgment indebtedness was non-dischargeable under 11 U.S.C. § 523(a)(4). On April 6, 1998, Bankruptcy Judge Adlai S. Hardin, Jr. ruled that all but $75,000 of the judgment entered against Debtor was dischargeable. *Zohlman v. Zoldan (In re Zoldan)*, 221 B.R. 79 (Bankr. S.D.N.Y.1998). This appeal, over which this District Court has jurisdiction pursuant to 28 U.S.C. § 158, followed.

For the reasons stated herein, the decision of the Bankruptcy Court is affirmed.

## DISCUSSION

### I. Standard of Review

On appeal, a bankruptcy court's conclusions of law are reviewed de novo. FED. R.BANKR. 8013; *Federal Deposit Ins. Corp. v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 130 (2d Cir.1992); *Peters v. Hennenhoeffer (In re Peters)*, 133 B.R. 291, 294 (S.D.N.Y.1991), *aff'd*, 964 F.2d 166 (2d Cir. 1992) (per curiam). However, Federal Rule of Bankruptcy 8013 provides that, "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." *See also Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1388 (2d Cir. 1990); *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988 (2d Cir.1990); *BT/SAP Pool C Associates v. Coltex Loop Central Three Partners*, 203 B.R. 527 (S.D.N.Y.1996), *aff'd sub nom., In re Coltex Loop Central Three Partners*, 138 F.3d 39 (2d Cir.1998).

### II. Burden of Proof

■ In order to prevail on a claim of non-dischargeability under § 523(a)(4), the Su-

preme Court has held that the burden is on the party claiming non-dischargeability. The appropriate level of proof is the "preponderance of the evidence" standard. *Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Community Mutual Savings Bank v. Landrin (In re Landrin)*, 173 B.R. 307, 310 (Bankr.S.D.N.Y.1994).

### III. General Principles for Discharge in Bankruptcy Determinations

The courts have repeatedly stressed that the 523(a) exceptions to discharge must be strictly construed in favor of the debtor in order to comport with the "fresh start" policy underlying the Bankruptcy Code. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Household Finance Corp. v. Danns (In re Danns)*, 558 F.2d 114, 116 (2d Cir.1977); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir.1996).

### IV. Collateral Estoppel

■ The Creditor's first claim on this appeal is that the Bankruptcy Court erred by not finding collateral estoppel based upon the assessment of a surcharge against Debtor in state court.[4] Creditor claims that the accounting, and the subsequent assessment of a surcharge in state court, constituted a finding of both the existence of a fiduciary relationship between the parties and of defalcation under § 523(a)(4), thus estopping Debtor from re-litigating these issues. This contention is without merit.

■ It is well settled that for collateral estoppel to apply, the issue sought to be precluded must be identical to an issue necessarily decided in the prior action.[5] *Long*

---

4. Collateral estoppel principles do apply, when appropriate, to dischargeability proceedings under Section 523(a) of the Bankruptcy Code. *Grogan*, 498 U.S. at 284 n. 11, 111 S.Ct. 654.

5. The complete, four-part test to establish whether collateral estoppel applies to a prior court's findings is as follows:

 (1) The issue sought to be precluded must be identical to that involved in the prior action;

 (2) The issue must be actually litigated and actually decided;

(3) There must have been a full and fair opportunity for litigation in the prior proceeding; and

(4) The issue previously decided must have been necessary to support a valid and final judgment on the merits. *See, e.g., Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987).

Collateral estoppel is inapplicable to the instant case because of failure to satisfy requirement number one; it is therefore unnecessary to analyze requirements two, three and four.

*Island Lighting Co. v. Imo Industries, Inc.,* 6 F.3d 876, 885 (2d Cir.1993); *In re Landrin,* 173 B.R. at 312 n. 5. Moreover, the party invoking collateral estoppel has the burden of identifying the precise issues litigated in the prior action and establishing a record sufficient to reveal the controlling facts. *In re Landrin,* 173 B.R. at 312 n. 5.

■ Creditor has failed in his attempt to provide such a record, primarily because there is nothing in the Referee's Report nor in the state court decision to indicate that the question of "fiduciary capacity" or "defalcation," as interpreted under the Bankruptcy Code, was previously decided. As we shall see in the following sections, the definitions of "fiduciary" and "defalcation" for purposes of § 523(a)(4) are highly specialized determinations, and their meaning is narrowly confined to the bankruptcy context. The Referee's Report, upon which the state court decision relies, gives little explanation for disallowing certain expenses. When an explanation is given, the primary reason offered for disallowance of a partnership expense is simply improper documentation or verification by Debtor. The state court judgment also provides little assistance in assessing the basis for the surcharge, since it merely affirms the Referee's Report without comment. Such scant findings make it impossible to say that the existence of both a fiduciary relationship and of defalcation were "specifically decided" by the state court. *Nate B. & Francis Spingold Foundation, Inc. v. Halperin (In re Halperin),* 215 B.R. 321, 336 (Bankr.E.D.N.Y.1997); *Citibank v. Hyland (In re Hyland),* 213 B.R. 631, 633 (Bankr.W.D.N.Y.1997) (if the prior decision amounts to a "mere recitation of result, with no specific statement of findings," collateral estoppel should not apply). This is especially true since any reasonable doubt as to what was previously decided by a prior judgment should be resolved by deciding against using it as estoppel. *Revelle Motors, Inc. v. Spector (In re Spector),* 22 B.R. 226 (Bankr.N.D.N.Y.1982); BANKR.EVID. MANUAL § 30 (West 1997).

## V. The Meaning of "Fiduciary"

§ 523(a)(4) provides that:

(a) a discharge under section 727 ....does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C.A. § 523(a)(4) (West 1993). Creditor alleges only that Debtor has committed a "defalcation" for purposes of this section, and thus analysis of the requirements for fraud, larceny, or embezzlement is unnecessary for this decision. Our discussion of this appeal will therefore turn on two questions; first, whether the Debtor stood in a fiduciary relationship to the Creditor for purposes of § 523(a)(4). Second, whether the Debtor committed a defalcation under the meaning of this section.

■ To sustain a cause of action for fraud or defalcation under § 523(a)(4), the plaintiff must first establish that the debtor acted while in a fiduciary capacity. *Barristers Abstract Corp. v. Caulfield (In re Caulfield),* 192 B.R. 808, 818 (Bankr.E.D.N.Y. 1996); *DeRosa v. Jacone (In re Jacone),* 156 B.R. 740 (Bankr.S.D.N.Y.1993). The definition of fiduciary is to be narrowly construed so that it does not reach debtor-creditor transactions in which the debtor merely violated the terms of his commercial agreement with the creditor. *Schwalbe v. Gans (In re Gans),* 75 B.R. 474, 489 (Bankr.S.D.N.Y. 1987) (internal quotations omitted).

■ The meaning of fiduciary is a matter of federal law. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)(4). *Peerless Ins. Co. v. Casey (In re Casey),* 181 B.R. 763 (Bankr.S.D.N.Y.1995); *Farina v. Balzano (In re Balzano),* 127 B.R. 524 (Bankr. E.D.N.Y.1991); *In re Gans,* 75 B.R. at 489. Section 523(a)(4) applies only to express or technical trusts. Constructive or implied trusts, or any trust where the existence of the trust is created merely on the basis of wrongful conduct (a trust ex maleficio) do not create a fiduciary relationship. *OnBank & Trust Co. v. Siddell (In re Siddell),* 191 B.R.

544 (Bankr.N.D.N.Y.1996); *In re Casey*, 181 B.R. at 766; *In re Gans*, 75 B.R. at 489. Put another away, the fiduciary relationship must exist prior to the act creating the debt; a trust relationship cannot be said to arise merely from the wrongful conduct itself. *Angelle v. Reed (Matter of Angelle)*, 610 F.2d 1335 (5th Cir.1980); *Air Traffic Conference v. Paley (In re Paley)*, 8 B.R. 466 (Bankr. E.D.N.Y.1981).

■ This reading is necessary in light of the plain language of the statute. The requirement of the existence of a fiduciary relationship is a special limit imposed only for findings of defalcation or fraud; no such fiduciary relationship is necessary for non-dischargeability resulting from larceny or embezzlement. 11 U.S.C.A. § 523(a)(4). The fiduciary relationship requirement is intended to further limit the applicability of non-dischargeability for fraud or defalcation specifically. If the wrongful conduct itself created the trust relationship, then this added requirement would be useless; the fraud or defalcation itself would create the fiduciary relationship, and the fiduciary relationship requirement would be a mere redundancy.

■ While this analysis clarifies the definition of fiduciary under federal law, the extent to which state law plays a role in analyzing the existence of a fiduciary relationship has been the subject of much debate. *See, e.g., Ragsdale v. Haller*, 780 F.2d 794 (9th Cir.1986); *Walters v. Sawyer (In re Sawyer)*, 130 B.R. 384 (Bankr.E.D.N.Y.1991); *Stone v. Stone (In re Stone)*, 90 B.R. 71 (Bankr.S.D.N.Y.1988), *aff'd*, 94 B.R. 298 (S.D.N.Y.1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989); *Reiter v. Napoli (In re Napoli)*, 82 B.R. 378 (Bankr.E.D.Pa.1988). The problem arises because, while federal law dictates that the fiduciary relationship can only arise from an express or technical trust, state common law or state statute can create such express or technical trusts for purposes of § 523(a)(4). Federal law tells us that only express or technical trusts create a fiduciary relationship in this context, but state law tells us when an express or technical trust exists in the individual case. Thus, it is often said that, "Although the concept of fiduciary is to be narrowly defined as a matter of federal law, state law is to be construed to determine when a trust in this strict sense exists." *Ragsdale*, 780 F.2d at 796. We must therefore turn to New York partnership law to determine if a trust or fiduciary relationship exists between a general partner (Debtor) and his/her limited partners (including Creditor).

Creditor relies on N.Y. Partnership Law § 43 (West 1988) in arguing that New York statutory law creates the necessary fiduciary relationship for § 523(a)(4). N.Y. Partnership Law § 43 mirrors the Uniform Partnership Act, which has been adopted by numerous states. *See, e.g.,* Cal.Corp.Code § 15021 (West 1977); Ind.Code 23–4–1–21(1); 15 Pa. C.S. § 8334. The New York version provides:

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

N.Y. Partnership Law § 43. Because this language has been adopted essentially verbatim as partnership law in other states, numerous courts have had occasion to analyze whether it creates a "fiduciary relationship" for purposes of § 523(a)(4). *Ragsdale*, 780 F.2d 794; *In re Stone*, 94 B.R. 298; *In re Sawyer*, 130 B.R. 384; *In re Napoli*, 82 B.R. 378. Some courts have held that this language, standing alone, creates an express or technical trust sufficient to establish a fiduciary relationship for purposes of the Bankruptcy Code. *43 East 74th Street Associates v. Marceca (In re Marceca)*, 129 B.R. 371 (Bankr.S.D.N.Y.1991); *Getaz v. Stewart (In re Stewart)*, 123 B.R. 817 (Bankr.W.D.Tenn. 1991).

■ In contrast, another substantial group of cases, led most persuasively by *Ragsdale*, make clear that the language contained in N.Y. Partnership Law § 43 is insufficient to create an express or technical trust for purposes of the Bankruptcy Code. *Ragsdale*, 780 F.2d 794; *In re Stone*, 94 B.R. 298; *In re Sawyer*, 130 B.R. 384. As *Ragsdale* holds, while interpreting language identical

to N.Y. Partnership Law § 43 as enacted in California:

> [Creditor] claims that the words "hold as trustee" establish an express trust, that all partners are trustees for the rest of the partnership, and that a partner is therefore a fiduciary within the meaning of the act. However, under this statute, the trust arises only when the partner derives profits without consent of the partnership; it is this sort of trust ex maleficio not included within the purview of § 523(a)(4).

*Ragsdale*, 780 F.2d at 796 (internal citations omitted). Courts in our jurisdiction, citing *Ragsdale*, have adopted this interpretation, and we adopt it as well. *In re Stone*, 94 B.R. 298; *In re Sawyer*, 130 B.R. 384. The language "hold as trustee ... any profits derived by him without ... consent" in N.Y. Partnership Law § 43 creates only a trust ex maleficio and not a pre-existing trust relationship.

However, as *Ragsdale* points out, this does not end the inquiry. *Ragsdale*, 780 F.2d at 796. If state common law has raised the duties of partners beyond those required by the literal wording of the statute, so as to create an express or technical trust by common law rather than by statutory law alone, then § 523(a)(4)'s fiduciary requirement can still be met. *Ragsdale*, 780 F.2d at 796–7.

 This is precisely the situation in regard to New York partnership law. Beyond the express language of N.Y. Partnership Law § 43, New York partners are all at times accountable to one another as trustees or fiduciaries. *In re Stone*, 94 B.R. 298; *In re Sawyer*, 130 B.R. 384. New York common law has raised the duties of partners above the level of § 43, so that the "true contours of a partner's fiduciary obligations are defined prior to and independent of the act which created the debt in question." *In re Stone*, 94 B.R. at 303. As then Chief Judge Cardozo held in 1928, a partner is "[a] trustee [who] is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164

N.E. 545 (1928). Since then, New York state courts have repeatedly emphasized that partners stand in a fiduciary relationship with one another. *Friedman v. Dalmazio*, 228 A.D.2d 549, 644 N.Y.S.2d 548 (1996); *Auld v. Estridge*, 86 Misc.2d 895, 382 N.Y.S.2d 897 (Sup.Ct.1976), *aff'd*, 58 A.D.2d 636, 395 N.Y.S.2d 969 (1977); *Riviera Congress Associates v. Yassky*, 48 Misc.2d 282, 264 N.Y.S.2d 624 (Sup.Ct.1965), *modified*, 25 A.D.2d 291, 268 N.Y.S.2d 854 (1966). Thus, while N.Y. Partnership Law § 43 does not provide the basis for establishing the necessary fiduciary relationship as required by § 523(a)(4), because New York common law surpasses the statute in the obligations placed upon partners in the state, Debtor in the instant case is a fiduciary.

It is here that we diverge to some degree from the ruling of the Bankruptcy Court below. There, the court held that in regard to the majority of the disputed expenses, the Debtor was not acting in a fiduciary capacity, but merely as a typical managing agent. *In re Zoldan*, 221 B.R. 79. However, the bankruptcy judge held that for some of the disputed expenses (namely Items B and C), the Debtor was acting in a fiduciary capacity.[6] 221 B.R. at 92. We see no reason why this particular partnership agreement should be viewed, even in part, as a mere commercial debtor-creditor relationship.

The Bankruptcy Court attaches much significance to provisions in the Partnership Agreement allowing the Debtor to hire himself as managing agent, permitting him to engage in any business which may compete with the project, and exonerating the debtor from any liability except for acts of gross negligence or willful misconduct. 221 B.R. at 89–90. It is argued that such clauses convert the partnership from that of a trust agreement to an ordinary commercial relationship in which the limited partners viewed Debtor as merely the managing agent of the office building. *Id.*

This court attaches little significance to these specific clauses in the Partnership Agreement. Indeed, the provision of the

---

6. The Bankruptcy Court found that Debtor was acting in a fiduciary capacity in regard to Items

B and C, but committed defalcation only in connection with Item C.

agreement that limits debtor's liability actually "emphasize[s] rather than relieve[s]" the inference that a fiduciary relationship existed between the parties. *Riviera Congress Associates,* 48 Misc.2d at 290, 264 N.Y.S.2d 624.

Beyond these specific provisions, if one assesses the Partnership Agreement as a whole, the limited partners were clearly entitled to view the general partner as a fiduciary. The agreement obligates the limited partners to entrust the general partner with a broad range of trust-like obligations, permitting him to: (1) select which accounts to deposit all funds of the partnership and to make deposits and withdrawals therefrom; (2) execute occupancy leases on behalf of the partnership; (3) arbitrate, compromise, settle, sue on or defend any claim of or against the partnership; (4) operate, manage, and maintain the project, and to sell, lease, or otherwise dispose of any assets of the partnership; (5) borrow on behalf of the partnership and on the partnership's credit such sums as he may deem necessary to provide for the partnership's liabilities or purposes; (6) execute on behalf of the partnership such documents as may be required to secure a loan, including a mortgage against the development project; (7) borrow funds on behalf of the partnership or advance the necessary funds, and; (8) function as the lawful attorney for each partner and act in the name, place and stead of each partner. *See* Partnership Agreement at 16–26.

Clearly, Debtor stood in a fiduciary relationship with all of the limited partners, including Creditor. An arrangement allowing an individual to, inter alia, execute leases, sue on behalf of the other investors, to secure loans or borrow funds on their behalf, and to act as the lawful attorney for each partner constitutes a business venture that could not be described as an ordinary commercial relationship.

 We disagree with the Bankruptcy Court's holding that Creditor and Debtor did not stand in a fiduciary relationship for most of the disputed expenses, but did have a fiduciary relationship for Items B and C only. If entering into a partnership agreement justifiably created a fiduciary relationship in the mind of Creditor, then a fiduciary relationship existed for all transactions related to the partnership. Since all these disputed expenses related to the overarching Partnership Agreement, all such expenses were incurred pursuant to a fiduciary relationship. Debtor was not, as the Bankruptcy Court held, "sometimes" acting in a commercial relationship with Creditor and "sometimes" acting in a fiduciary relationship with Creditor; he was at all times a fiduciary.

## VI. The Meaning of "Defalcation"

Having established that a fiduciary relationship existed between Creditor and Debtor for purposes of § 523(a)(4) of the Bankruptcy Code, Debtor must now show that Creditor committed a defalcation for purposes of this section. The meaning of the term "defalcation" in this context has been the subject of much discussion. *See, e.g., Otto v. Niles (In re Niles),* 106 F.3d 1456 (9th Cir.1997); *Lewis v. Scott (In re Lewis),* 97 F.3d 1182 (9th Cir.1996); *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir.1937) (L.Hand, J.); *Samuels v. Ellenbogen (In re Ellenbogen),* 218 B.R. 709 (Bankr.S.D.N.Y.1998); *Rutanen v. Baylis (In re Baylis),* 222 B.R. 1 (Bankr.D.Mass. 1998); *M–R Sullivan Manufacturing Co. v. Sullivan (In re Sullivan),* 217 B.R. 670 (Bankr.D.Mass.1998); *In re Casey,* 181 B.R. 763; *Semilof v. Waskew (In re Waskew),* 191 B.R. 34 (Bankr.S.D.N.Y.1995); *Burt Building Material Corp. v. Silba (In re Silba),* 170 B.R. 195 (Bankr.E.D.N.Y.1994); *Harper v. Richey (Matter of Richey),* 103 B.R. 25 (Bankr.D.Conn.1989); *In re Stone,* 90 B.R. 71.

The primary debate focuses on whether mere innocent or negligent conduct can constitute defalcation, or whether defalcation must include some element of wrongdoing. This distinction becomes central to the instant case because there is little evidence of active wrongdoing by the Debtor; instead, the basis of the Referee's Report relied upon by the state court judgment, as well as the Bankruptcy Court's own determination for most of the disputed expenses, is that the Debtor merely failed to provide adequate documentation for expenditures made in connection with the partnership. Thus, we are left with the question of whether defalcation can include merely negligent or even innocent default. We must remember that while

the legal meaning of "defalcation" is reviewed de novo, the Bankruptcy Court's factual determination that most of the disputed expenses were the product of mere negligence or innocent errors must stand unless it is clearly erroneous.

The circuits are divided on this issue. Some courts, including the Court of Appeals for the Ninth Circuit, hold that even an innocent default will suffice. *In re Lewis,* 97 F.3d 1182 ("defalcation includes innocent, as well as intentional or negligent defaults") (internal quotations omitted); *Woodworking Enterprises, Inc. v. Baird (In re Baird),* 114 B.R. 198, 204 (9th Cir. BAP 1990); *In re Casey,* 181 B.R. at 766 (for defalcation, one "need not allege that [the] actions were wrongful"); *LaPointe Development, Inc. v. Brown (In re Brown),* 131 B.R. 900, 904 (Bankr.D.Me.1991) ("defalcation ... comprehends the slightest misconduct, negligence or ignorance"); *Lee v. Crosswhite (In re Crosswhite),* 91 B.R. 156, 160 (Bankr.M.D.Fla. 1988) ("negligence or ignorance may be defalcation") (internal quotations omitted); *In re Gans,* 75 B.R. at 490 ("defalcation does not require evidence of any intentional wrong") (internal quotations omitted).

Others, including the Courts of Appeals for the Fifth, Sixth, and Seventh Circuits, require fault at least greater than mere negligence. *Schwager v. Fallas (Matter of Schwager),* 121 F.3d 177, 185 (5th Cir.1997) ("defalcation is a willful neglect of fiduciary duty ... while defalcation may not require actual intent, it does require some level of mental culpability"); *LSP Investment Partnership v. Bennett (Matter of Bennett),* 989 F.2d 779, 790 (5th Cir.1993) ("defalcation is a willful neglect of duty"); *Sheerin v. Davis (Matter of Davis),* 3 F.3d 113, 115 (5th Cir. 1993); *Moreno v. Ashworth (Matter of Moreno),* 892 F.2d 417, 421 (5th Cir.1990); *Carlisle Cashway, Inc. v. Johnson (In re Johnson),* 691 F.2d 249, 254–57 (6th Cir.1982) (interpreting § 523(a)(4)'s predecessor, § 17(a)(4), explaining that while no intent nor "actual knowledge" of illegality is required for defalcation, the conduct must rise above "mere negligence"); *Meyer v. Rigdon,* 36 F.3d 1375, 1384–85 (7th Cir.1994) (interpreting defalcation under § 523(a)(11), "a mere negligent breach of fiduciary duty is not a defalcation").

Moreover, while the Eleventh Circuit is less explicit on this issue, it has held, in finding defalcation under § 523(a)(4), that the conduct of the debtor "was far more than an innocent mistake or even negligence" (debtor had failed to pay money held in trust for creditor, and instead transferred the funds to the operating and payroll accounts of the business for which he was the sole shareholder). *Quaif v. Johnson,* 4 F.3d 950, 955 (11th Cir.1993). While the First Circuit has not ruled on this issue, two bankruptcy court decisions within the last year in the circuit have ruled that defalcation requires a degree of fault greater than negligence. *In re Baylis,* 222 B.R. 1; *In re Sullivan,* 217 B.R. 670.. For an excellent analysis of the sharp split among lower courts on this issue, see *In re Ellenbogen,* 218 B.R. 709.

The only Second Circuit decision to deal directly with this question is less than definitive. *Central Hanover Bank & Trust v. Herbst,* 93 F.2d 510 (2d Cir.1937) (interpreting § 17(a)(4), the predecessor to § 523(a)(4)). Those who advocate a broad interpretation of "defalcation," so as to include innocent or negligent conduct, often cite only one section of Judge Learned Hand's now famous decision:

> Colloquially perhaps the word, "defalcation", ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts.

*Central Hanover,* 93 F.2d at 511. However, a closer reading of the case reveals Judge Hand's further explanation, implying that some "moral dereliction" might actually be required: "In the case at bar the bankrupt has not been entirely innocent ... 'defalcation' may demand some portion of misconduct; we will assume arguendo that it does". *Central Hanover,* 93 F.2d at 512. Moreover, if one looks at the facts of *Central Hanover,* one learns that the bankrupt (who, after obtaining a money judgment, spent the money before the appeal was decided, making him unable to repay the money to the plaintiff after the judgment was reversed), "knew, or if he did not know, he was charged with notice (having held himself out as competent to be an officer of the court), that the order would not protect him if it were reversed

. . . ." *Central Hanover,* 93 F.2d at 512. By treating the debtor as "on notice" that he should not have spent funds entrusted to him, Judge Hand apparently viewed the debtor as more than "merely negligent." Thus, the leading Second Circuit case on the matter seems to require more than a completely innocent failure to account for money held in trust.[7]

 In deciding between these two approaches, we are reminded that it is a basic principle of statutory construction that an exception to a debt's discharge should be strictly construed because of the policy of favoring a debtor's fresh start. *Davis,* 293 U.S. 328, 55 S.Ct. 151; *Gleason,* 236 U.S. at 562, 35 S.Ct. 287; *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); *Meyer,* 36 F.3d at 1385; *Matter of Angelle,* 610 F.2d 1335; *In re Baylis,* 222 B.R. 1; *In re Gans,* 75 B.R. 474.

Creditor urges this court to make a broad reading of the definition of "fiduciary" for purposes of § 523(a)(4) and to make a broad reading of "defalcation" as well. Such a reading offends the principle of statutory construction in bankruptcy outlined above. Many people who file for bankruptcy have "less than perfect" bookkeeping, as Debtor did, which is presumably one of the reasons their respective business ventures result in bankruptcy in the first place. If Debtor were said to have committed a defalcation merely because he failed to provide suitable "back-up documentation" for various partnership expenses, then § 523(a)(4) would become an enormously broad exception to dischargeability.

 This is especially true given the interplay between federal and state law in defining "fiduciary." When state courts and legislatures create express or technical trusts in a plethora of areas, from corporate officers, to joint venturers, attorneys, building contractors, real estate agents, insurance brokers, and executors, often without considering the substantial ramifications such expansion could have in the bankruptcy context, each of these individuals becomes a "fiduciary" for purposes of the Bankruptcy Code. 3 NORTON BANKR. L. & PRAC. § 47:25–§ 47:29 (2d ed. Supp.1998). Given the ever-expanding definition of what constitutes a "fiduciary," to couple this expansion with an equally expansive view of defalcation would defeat the fresh start objective of the bankruptcy law. Creditor urges us essentially to hold that any partner guilty of sloppy record keeping is a fiduciary who has committed defalcation for purposes of § 523(a)(4). It is a position we cannot take.[8]

 While a precise definition of defalcation should be determined on a fact-specific basis, we will at least frame the debate, as it becomes necessary for our purposes. Defalcation requires more than mere negligence, and cannot be a completely innocent act. While defalcation may not require actual intent, nor may it rise to the level of misappropriation, it does require some level of mental culpability. The purpose of Section 523 was to remove from the debtor's capacity the ability to discharge certain debts arising from practices Congress deemed so pernicious that bankruptcy should not insu-

7. An often cited Southern District of New York case supports this contention. *In re Stone,* 90 B.R. 71. There, in finding "fraud and defalcation," the court concludes, inter alia, that the debtor made "false representations," "affix[ed] the plaintiff's signature fraudulently to corporate minutes in order to make amendments to the corporate charter," and made a stock transfer of "questionable validity . . . amounting to a diversion of the plaintiff's interest." *In re Stone,* 90 B.R. at 80. Such conduct by the debtor clearly amounts to more than "mere negligent" behavior.

8. Creditor attaches special significance to the common definition for defalcation that includes failure to "account for" trust funds. BLACK'S LAW DICTIONARY 514 (4th ed.1958). Creditor urges us

to believe that failure to account includes the Debtor's inability to provide adequate back-up documentation for partnership expenses. This is merely another attempt to remove the requirement, a requirement already established in the Fifth, Sixth, Seventh, and arguably Second and Eleventh Circuits, that some degree of fault is required to find defalcation. We hold that failure to account means that "trust property is missing," or that the fiduciary "failed to pay it over as he ought," not merely that expenses were not well documented. *In re Baylis,* 222 B.R. at 6; *McMahon v. Rudd (In re Rudd),* 1987 WL 19488 (Bankr.D.Vt.1987). Our reading of "to account" is thus consistent with the interpretation that defalcation requires more than mere negligence.

late the debtor from their payment. *In re Sullivan*, 217 B.R. at 678. For our purposes, defalcation is "willful neglect," essentially a standard of recklessness or at least gross negligence. *Matter of Schwager*, 121 F.3d at 185.

■ We must now apply this analysis to the fifteen disputed items referenced in the chart herein, bearing in mind that Creditor has the burden of proving by a preponderance of credible evidence each factual element necessary to be proved to establish non-dischargeability under § 523. *Grogan*, 498 U.S. at 285, 111 S.Ct. 654; *In re Landrin*, 173 B.R. at 310. Further, because our legal definition of defalcation matches that provided in the bankruptcy decision below, the Bankruptcy Court's factual determination with respect to these fifteen items must be clearly erroneous for the district court to overturn them. FED.R.BANKR. 8013. As to fourteen of the fifteen items (Items A, B, D, E, F, G, H, I, J, K, L, M, N, and O), the Bankruptcy Court found that Debtor's conduct in regard to each of these items constituted no more than mere negligence. A look at the Referee's Report, the state court judgment, and the record as a whole shows that there is no evidence in regard to any of these items that the Bankruptcy Court's findings were clearly erroneous.

As to Item A, the Referee concluded that the expense "would appear to [be] a calculation error." There is nothing in the record to show that this error was anything but, at the worst, negligent. For Item B, the entire sum of the Referee's reported findings was a single sentence: "This is not provided as an agreed expense by the partnership agreement and is disallowed." There is nothing in the record to indicate, however, that Debtor was motivated by anything other than a good-faith belief that he was entitled to this expense (in this case the taking of a $15,000 mortgage fee after obtaining refinancing for the Office Building). The Bankruptcy Court also found that Creditor offered no evidence whatsoever in regard to Item B specifically; the Bankruptcy Judge held that, "after hearing the credible testimony" of Debtor, Debtor's belief that he was entitled to the fee was

in good-faith.[9] Nothing presented to this court by Creditor indicates that this factual determination was clearly erroneous.

In regard to Items E and H, the Referee found no impropriety at all and allowed these expenses in full, and nothing in the record contradicts the correctness of this finding. The Referee's Report provides no guidance whatsoever as to the rationale for the partial disallowance of Items I, L, and N. Because the burden is on Creditor to provide a record sufficient to justify non-dischargeability, and because no specific factual allegations to bolster this claim in regard to Items I, L, and N have been provided, the claim for non-dischargeability of these items must fail. As to Items D, F, G, J, K, M, and O, the only basis for partial disallowance given by the Referee was inadequate record keeping by the Debtor: "unreasonable ... unproven ... and I have no verification" (Item D); outside labor and salary expenses should not have been "charg[ed as] a flat percentage when it would have been easy to allocate [each expense] on a reasonably exact basis" (Items F and G); "violat[ed] the partnership agreement of keeping good records" (Item J); "did not produce bills" (Item K); "did not properly document," (Item M); no "backup [documentation]" (Item O). Creditor does little more in the record than point to these findings. Since there is no evidence that Debtor wrongfully spent or failed to produce these funds, and since there is no evidence that his poor record keeping was the product of more than mere negligence, no defalcation occurred with regard to these three items. On the whole, these fourteen items are dischargeable debts, since the Bankruptcy Court's factual findings regarding them were not clearly erroneous.

■ Item C, however, is on different footing. The Referee found that this expense, a commission Debtor paid to himself after arranging for the sale of the Office Building, was "not provided as an agreed expense by the partnership agreement." Referee's Report at 3. More important, however, is the fact that even though Creditor specifically objected in writing to the payment of such a commission to Debtor out of

---

9. Unlike *Central Hanover*, there is no evidence that Debtor was "on notice" that he was not entitled to these funds related to Item B (he was possessed of such notice, however, for Item C, *supra*). *Central Hanover*, 93 F.2d at 512.

partnership assets, Debtor nonetheless went ahead and paid himself a $75,000 commission. *In re Zoldan,* 221 B.R. at 92. To proceed with such a payment, despite a formal written protest by Creditor, makes Debtor's conduct in regard to Item C rise beyond "mere negligence." Instead, Debtor's conduct was at least reckless, and thus the paying of the $75,000 commission does constitute defalcation. This court therefore affirms the Bankruptcy Court's finding of non-dischargeability with respect to Item C.

### CONCLUSION

The decision of the Bankruptcy Court is affirmed. Creditor is entitled to an order denying dischargeability as to Item C only. Counsel for Debtor shall submit a proposed judgment order on ten days notice to counsel for Creditor.

**SO ORDERED.**