In re David L. KOHLER, Debtor.

Corestates Asset Management, Administrator of the Estate of Emma J. (Kittle) King Loose, Plaintiff,

v.

David L. Kohler, Defendant.

Bankruptcy No. 97–23398T.
Adversary No. 98–2148.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 8, 2000.

Thomas C. Anewalt, Allentown, PA, for CoreStates Asset Management.

Mark C. Van Horn, Allentown, PA, for David L. Kohler.

John T. Carroll, Cozen & O'Connor, Philadelphia, PA, trustee.

### MEMORANDUM OPINION

THOMAS M. TWARDOSKI, Bankruptcy Judge.

Before the court is a complaint filed by Plaintiff, Corestates Asset Management ("Plaintiff"), requesting that the debt owed to it by Debtor, David L. Kohler ("Debtor") be found nondischargeable under 11 U.S.C. § 523(a)(2) and (4). For the reasons that follow, we conclude that Plaintiff met its burden of establishing that the debt owed to it arose from Debtor's fraud or defalcation while acting in a fiduciary capacity and we enter judgment in favor of Plaintiff finding the debt nondischargeable under section 523(a)(4).

Plaintiff maintains that the debt in question should be found nondischargeable under 11 U.S.C. § 523(a)(4) as a debt obtained through "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Essential to a finding of nondischargeability under this subsection is a finding that the debtor was acting in a fiduciary capacity at the time the debt arose. While the scope of the term "fiduciary capacity" under section 523(a)(4) is a question of federal bankruptcy law, state law must be examined to determine whether a fiduciary obligation exists. *LSP Investment Partnership v. Bennett (Matter of Bennett)*, 989 F.2d 779, 784 (5th Cir.), *cert. denied*, 510 U.S. 1011, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993); *see also Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997), *cert. denied*, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998); *Windsor v. Librandi (In re Librandi)*, 183 B.R. 379, 382 (M.D.Pa.1995); *Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 155–56 (Bankr.D.Md.1999); *Zohlman v. Zoldan (In re Zoldan)*, 221 B.R. 79, 84 (Bankr. S.D.N.Y.), *aff'd*, 226 B.R. 767 (S.D.N.Y. 1998). Nonetheless, to meet the requirements of the "fiduciary capacity" element of section 523(a)(4), the plaintiff must establish the existence of an express or technical trust which was "imposed before and without reference to the wrongdoing that caused the debt." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir.1996). *See also Bennett*, 989 F.2d at 784; *The Cadle Co., II, Inc. v. Hartman (In re Hartman)*, 254 B.R. 669 (Bankr.E.D.Pa. 2000); *Pennsylvania Manufacturers' Assoc. v. Desiderio (In re Desiderio)*, 213 B.R. 99, 102–03 (Bankr.E.D.Pa.1997); *Griffith, Strickler, Lerman, Solymos &*

*Calkins v. Taylor (In re Taylor)*, 195 B.R. 624, 629 (Bankr.M.D.Pa.1996). As stated by the court in *Bennett*, 989 F.2d at 784–85:

> There has been some disagreement among the courts as to what exactly is meant by the requirement that there be a 'technical trust' to satisfy section 523(a)(4). Most courts today, however, recognize that the 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law. (citations omitted). Thus, the trust obligations necessary under section 523(a)(4) can arise pursuant to a statute, common law or a formal trust agreement.

*See also Librandi*, 183 B.R. at 382; *Zoldan*, 221 B.R. at 87; *United States v. Bagel (In re Bagel)*, Case No. 92–11440F, 1992 WL 477052 *12 (Bankr.E.D.Pa. Dec. 17, 1992), *aff'd, without opinion*, 22 F.3d 300 (3rd Cir.1994). The elements for determining whether a debtor acted in a "fiduciary capacity" for purposes of section 523(a)(4) have been identified by one court as follows:

> *(1)* a continuing relationship of trust existing prior to and irrespective of any particular act of wrongdoing, *(2)* a trust res or property with respect to which the party to be charged is accountable to others and *(3)* characteristically fiduciary duties over and above the obligations inherent in an ordinary, arm's length commercial relationship, whether such duties are created by contract, common law or statute.

*Zoldan*, 221 B.R. at 87.

To prove the "fiduciary capacity" element of section 523(a)(4), Plaintiff points to the fact that a confidential relationship was found to exist between Debtor and Emma Loose by the Lehigh County Court of Common Pleas Orphans' Court Division ("Orphans' Court") in the Decree Nisi and Adjudication entered on September 22, 1994 in *In re Emma J. (Kittle) Loose*, File No. 1988–1057 (Lehigh Co. Ct. Comm. Pleas Orphans' Ct. Div. Sept. 22, 1994). Specifically, the Orphans' Court concluded that:

> [Debtor] placed himself in a confidential relationship with Emma, thereby obligating him to deal with her fairly, openly, responsibly and with integrity. [Debtor] breached those obligations, abused the confidence he had induced Emma to place in him, and is now accountable. Accordingly, we have ruled that he must return to Emma's estate all that he improperly and unfairly induced her to give to him: the real estate, the money and the tangible personal property. This court, cannot, of course, order the return of the most valuable 'gift' that Emma gave to [Debtor]; her trust in him. Unfortunately, that is not a recoverable loss.

*In re Emma J. (Kittle) Loose*, Decree Nisi and Adjudication at 53–4. Plaintiff argues that this confidential relationship satisfies the "fiduciary capacity" requirement of section 523(a)(4) because it arose pursuant to Pennsylvania common law and imposed trust-type obligations upon Debtor in his relationship with Emma Loose.

We agree with the argument advanced by Plaintiff and find that the confidential relationship found to exist between Debtor and Emma Loose by the Orphans' Court satisfies the requirements for determining whether a debtor acted in a "fiduciary capacity" for purposes of section 523(a)(4). As is evident in the passage from the Orphans' Court's Adjudication quoted above, the Orphans' Court clearly found that a continuing relationship of trust existed between Debtor and Emma Loose, that this relationship of trust existed prior to and irrespective of the wrongdoing committed by Debtor, that a trust res or property existed with respect to which Debtor was accountable to others and that characteristically fiduciary duties existed which were over and above those that normally exist in an arm's length commercial rela-

tionship. *See Zoldan,* 221 B.R. at 87. In addition, the confidential relationship found to exist between Debtor and Emma Loose by the Orphans' Court involved "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter [and as such] the law does not treat the relation as a relation at arm's length between equals." *Matter of Marchiando,* 13 F.3d 1111, 1116 (7th Cir.), *cert. denied,* 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). For all of these reasons, we find that the confidential relationship found to exist between Debtor and Emma Loose under Pennsylvania common law by the Orphans' Court satisfies the "fiduciary capacity" element of section 523(a)(4).

We next turn to the issue of whether Plaintiff established that the debt in issue arose as a result of Debtor's "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). To prove defalcation under section 523(a)(4), Plaintiff must establish a "willful neglect of duty, even if not accompanied by fraud or embezzlement." *Bennett,* 989 F.2d at 790. *See also, Collier on Bankruptcy,* 15th Ed. Rev., ¶ 523.10.[1][b] at 523–70–71 ("defalcation refers to a failure to produce funds entrusted to a fiduciary and applies to conduct that does not necessarily reach the level of fraud, embezzlement or misappropriation."). While there is some debate among the courts as to whether "mere innocent or negligent conduct can constitute defalcation, or whether defalcation must include some element of wrongdoing," *Zohlman v. Zoldan,* 226 B.R. 767, 775 (S.D.N.Y.1998), we need not concern ourselves with this distinction because the Orphans' Court plainly found Debtor's conduct in this case to, at the least, include some element of wrongdoing. Clearly, the Orphans' Court's conclusions that Debtor "improperly and unfairly induced Emma to give him [real estate, money and tangible

personalty]", *In re Emma J. (Kittle) Loose,* Decree Nisi and Adjudication at 54, and "intentionally isolated Emma from others, fostered her complete dependence upon him, and consistently instilled in her the belief that he alone would assure that she was never placed in a nursing home, her greatest fear, [only to then] breach [the fiduciary obligations he owed to her] and abuse the confidence he induced Emma to place in him", *In re Emma J. (Kittle) Loose,* Decree Nisi and Adjudication at 53, satisfy the "defalcation" element of section 523(a)(4), even if we were to adopt the more stringent definition which requires some element of wrongdoing. Accordingly, we find that the debt in issue is nondischargeable under section 523(a)(4) and we enter judgment in favor of Plaintiff.[1]

---

1. Since we find the debt in issue to be nondischargeable under section 523(a)(4), we need not address Plaintiff's alternative argument that the debt is also nondischargeable under section 523(a)(2)(A).